# JOHNSON CITY v. W. C. ALLISON et al.—362 S. W. (2d) 813.

Eastern Section. March 27, 1962.

Certiorari Denied by Supreme Court November 28, 1962.

W. L. Price, Kent Herron and J. R. Simmonds, Johnson City, for appellant.

Wilson, Worley & Gamble, Kingsport, and Robert M. May, Jonesboro, for appellees.

McAMIS, P. J.  This suit was filed December 23, 1957, by the City of Johnson City to contest the constitutionality of Chapter 856, Private Acts of 1949, applicable on a population basis to Washington County only and affecting the composition of the Board of the electric utility known as the Johnson City Power Board, serving Johnson City, the rural areas of Washington County and the Town of Jonesboro.  The bill charges that, in giving representation on the Board to Washington County and the Town of Jonesboro, the 1949 Act suspends the general law and constitutes special legislation contrary to Article 11, Section 8 of the Constitution of Tennessee.

Complainant in 1945, acting under the Municipal Plant Act, Chapter 32, Acts of 1935, now T. C. A. sec. 6-1501

et seq., organized the Johnson City Power Board. In June of that year it purchased from Tennessee Valley Authority, an agency of the Federal Government, the electric distribution system serving Johnson City and its environs and, at the same time, entered into a contract with it for the purchase of power over a period of approximately 20 years.

At about the same time, complainant entered into separate contracts with Washington County and the Town of Jonesboro providing among other things for the sale of power within and to the County and Town, for franchises within their respective borders and for the non-alienation by the Power Board for a period of years of that portion of the distribution system lying outside the limits of Johnson City. The County and the Town of Jonesboro in turn agreed during the term of the contract not to grant franchises to any other distributor of electricity within their respective territories. These contracts were later ratified by the Chancery Court of Washington County by an agreed decree approved by the City of Johnson City, Washington County and the Town of Jonesboro.

Since its organization the Board has continuously served all of these territories and, at the time of the passage of the Private Act of 1949, it had 5,650 customers outside its municipal limits and 8,204 within. Its revenue during that year was $293,206.10 from rural customers. In the three preceding years both the rate of gain in revenue and in the number of customers in the rural areas substantially exceeded the rate of gain in the urban territory served by the Board. The Board, however, as provided by the Act of 1935, continued to be composed of five appointees of the Board of Commissioners of the

City of Johnson City, leaving both Washington County and the Town of Jonesboro without representation on the Board.

Against this background, the private act here under attack was passed, providing that in Counties having a population of not less than 55,600 and not more than 55,700 by the census of 1940 (making it applicable alone to Washington County), where one municipality within the county operates an electric plant under the "Municipal Electric Plant Act" and serves, in addition to its own inhabitants, the inhabitants of the County and of some other incorporated town or city there should be added to the governing board two representatives of the county to be chosen by the County Court and one by the governing body of such other incorporated town or city. Since the original members of the Board, by the terms of the 1949 Act, were retained the Board now consists of eight members, five from Johnson City, two from Washington County and one from Jonesboro.

Section 4 of the Act declares that "in all such counties" the acquisition and holding of such electric plants shall be deemed a governmental function. In considering the other grounds of attack it will be assumed, as insisted, that this Section makes the body of the Act broader than the caption and that for that reason it is invalid. Under the express provisions of Section 5, however, any provision, if held unconstitutional, may be elided without impairing the constitutional validity of the remaining provisions. Treating Section 4 as elided, whether complainant's power activities are proprietary or governmental remains an open question.

T. C. A. secs. 6-1507, 6-1508 provide that a board of public utilities shall be created by the governing body of

the municipality issuing bonds for the acquisition of an electric plant which may consist of 2 or 4 appointees of the board and an additional member who may be the city manager or one of the members of the municipal board, all of whom must be residents of the municipality.

It is the insistence of complainant City of Johnson City that the deviation from the general act in the residence requirements and the number of members comprising the Board, permitted by the 1949 private act, constitutes vicious, unreasonable and arbitrary class legislation in contravention of Article 11, Section 8 of the Constitution of Tennessee in that the 1949 Act undertakes to suspend the general law of the State and impose upon one municipality with respect to its proprietary rights burdens not applicable to any other municipality within the State.

Defendants insist on the other hand that the 1949 Private Act deals with the governmental functions of complainant as an arm of the State and does not suspend the General Act of 1935 but is supplementary thereto and that the 1949 Act was designed to meet the unique situation which developed in Washington County subsequent to 1935.

█ In the concept of tort liability, there can be no doubt that a municipality, in owning and operating an electric plant and distribution system, acts in a corporate or proprietary rather than a governmental capacity. Saulman v. Mayor, etc., 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915 E, 316; Memphis Power and Light Company v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817; Watts v. Town of Dickson, 36 Tenn. App. 678, 260 S. W. (2d) 206; Havron v. Sequatchee Valley Elec. Co-op., 30 Tenn. App. 234, 204 S. W. (2d) 823, 826.

■ There is ample authority for holding, however, that the mere fact that in determining its tort liability a municipality must be regarded as acting in a corporate capacity does not foreclose a judicial determination that for other purposes the same activities are to be regarded as governmental. In City of Alcoa v. International Brotherhood of Electrical Workers, 203 Tenn. 12, 308 S. W. (2d) 476, in holding that employees of a municipal electric system should be enjoined from striking to compel the municipality to enter into a collective bargaining agreement, the Court said:

"(T)he rule as applied in the private proprietary tort cases is not and should not be applicable in this type of case."

■ Municipalities have a dual existence. Like those of an individual, their proprietary interests are protected by the privileges and immunities guaranteed by Article 11, Section 8 of the Constitution. But in the exercise of their governmental functions they are treated as a political subdivision of the State. With respect to the latter functions it was said in Smiddy v. City of Memphis, 140 Tenn. 97, 102, 203 S. W. 512:

"(I)n its capacity as an arm or branch of the state government, and in the exercise of its governmental functions, it is to be treated as a political subdivision of the state, and its governing, or political rights, are all to be regulated by those provisions of the Constitution which refer to it in that capacity, and by the Legislature in its unrestricted sovereign capacity. Redistricting Cases, 111 Tenn. 234, 80 S. W. 750."

■ The primary question here is whether the Act assailed deals in the conventional sense with the proprie-

tary rights of complainant or whether it is political in scope and purpose. We hold that the primary purpose of the Act is governmental or political and that its effect, if any, upon the proprietary rights of the City are but incidental to the main purpose of the Legislature to give rural users of public power representation on the Board.

Complainant, by organizing its power board under the general act of 1935, did not acquire constitutional immunity from the future exercise by the Legislature of its power to change the composition of the Board whenever warranted by a change of conditions deemed to involve the health and economic wellbeing of the territory it serves. It can hardly be denied that the rapid increase in customers living in the rural areas served by the Board is a reasonable basis for the change in composition provided by the 1949 Act. The Legislature may well have determined that this change entitled outside customers to representation on the Board as a matter of justice and right and that to give them representation on the Board would promote their economic and social wellbeing. And, it is to be remembered that the general act, operating in the domain of public power, envisions nonprofit organizations created by and operating under, a political subdivision of the State "to secure the benefit of the surplus power generated or to be generated by the Tennessee Valley Authority", etc. T. C. A. sec. 6-1534.

It is settled that special legislation affecting particular counties or municipalities in their governmental or political capacities does not offend Article XI, Section 8 of the constitution even though contrary to a general statute provided there is a reasonable basis for the action of the Legislature. In Town of McMinnville v. Curtis, et al., 183 Tenn. 442, 446, 192 S. W. (2d) 998, it was said:

"It is, of course, settled law that special legislation affecting particular counties or municipalities in their governmental or political capacities may be enacted without violating Article XI, Section 8 of the Constitution. Knoxville, City of, v. State ex rel. Hayward, 175 Tenn. 159, 167, 133 S. W. (2d) 465. Many such acts had (sic) been upheld by this Court. But in those cases the special act either was not in conflict with the provisions of the general law, *or the classification was upon a reasonable basis.*" (Italic ours)

While T. C. A. sec. 6-1503 authorizes a municipality operating under the general statute to provide electric services beyond its borders, there is no showing that prior to the 1949 Private Act other municipalities had done so to the extent that the number of outside customers as well as the revenue derived from them was approaching the number of customers and revenue from urban users of electricity. The proof tends to show there were none in the State which could be so classified. In any event, we must assume a constitutional basis for the action of the Legislature in making special provision for the composition of the Johnson City Power Board and assume that Washington County was unique in this respect.

Since, for the reasons indicated, we hold there was a reasonable basis for the special provision made by the Act of 1949 we need not decide whether it conflicts with the general act or, as defendants insist, is merely supplementary to it.

Affirmed.

Hale and Cooper, JJ., concur.