COUNTY OF SHELBY, a Political Subdivision of the State of Tennessee; Board of County Commissioners of Shelby County, Tennessee; and Charles R. Perkins, as Chairman of the Board of County Commissioners of Shelby County, Tennessee, Plaintiffs–Appellants,

James W. Anderson, Superintendent of Shelby County Board of Education, Rubye Dobbins, Carolyn Bobo, Tom Brooks, Homer Bunker, Finis F. Fields, Cheryl Hall and Karen Hill, Individually and comprising the Shelby County Board of Education, Plaintiffs–Intervenors–Appellants,

v.

Ned McWHERTER, Governor of the State of Tennessee; Riley C. Darnell, Secretary of the State of Tennessee; Charles W. Burson, Attorney General of the State of Tennessee; and Shelby County Election Commission, Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 3, 1996.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 28, 1996.

Brian L. Kuhn, Memphis, for Plaintiffs–Appellants.

R. Lee Winchester, Memphis, for Plaintiff–Intervenor–Appellants.

Charles W. Burson, Attorney General, Michael E. Moore, Solicitor General, Andy D. Bennett, Associate Chief Deputy, for Defendants–Appellees.

CRAWFORD, Presiding Judge, Western Section.

This appeal involves a declaratory judg-

ment suit. Shelby County's complaint [1] seeks an interpretation and declaration of the constitutionality of certain sections of the Educational Improvement Act of 1992 (EIA), as amended, now codified in Title 49 of the Tennessee Code Annotated. Shortly after the complaint was filed, the Shelby County Board of Education was allowed to intervene [2] in this suit to defend the constitutionality of a section of the act, T.C.A. § 49–2–201(c), as hereinafter discussed.

There are no disputed factual issues, and the trial court, without elaboration, held that the act, as amended, was constitutional except for the provisions of T.C.A. § 49–2–201(c), which the court declared to be unconstitutional.

Shelby County has appealed and presents the following issues for review as quoted from its brief:

1. Whether the Trial Court erred in finding the provisions of the Educational Improvement Act of 1992, adopted as Chapter 535 of the Public Acts of 1992, as amended by Chapter 40 of the Public Acts of 1995, is constitutional in all respects except for the provisions of T.C.A. § 49–2–201(c) in the specific areas as follows:

a. Whether T.C.A. § 49–2–203(a)(15) and § 49–2–301(d) violated Article XI, Section 17, of the Tennessee Constitution by abolishing the County Superintendent position.

b. Whether T.C.A. § 49–2–201(a)(1), (b); T.C.A. § 49–2–203(a)(15)(B)(I) and § 49–2–301(h)(1) are unconstitutional and in violation of Article I, Section 8, of the Tennessee Constitution and the Fourteenth Amendment of the U.S. Const. as being void for vagueness.

c. Whether the provisions of the Shelby County Home Rule Charter superseded the provisions of the Educational Improvement Act in Shelby County, Tennessee, relative to elected Boards of Education.

The Board of Education presents one issue for review, which, as quoted in its brief, is:

Assuming arguendo, that all other aspects of the Educational Improvement Act of 1991 are Constitutional, is T.C.A. § 49–2–201(c) likewise Constitutional or does it violate Article XI, § 9 of the Tennessee Constitution?

The first issue for our review is: "Whether T.C.A. § 49–2–203(a)(15) and § 49–2–301(d) violated Article XI, Section 17, of the Tennessee Constitution by abolishing the County Superintendent position."

Article XI, Section 17 of the Tennessee Constitution provides: "No county office created by the Legislature shall be filled otherwise than by the people or the County Court." [3] Article XI, Section 17 was designed "to preserve the right of choice to the people, either directly or through their designated agents, the justices of the county court." *Carr v. State ex rel. Armour,* 196 Tenn. 256, 261, 265 S.W.2d 556, 558 (1954). T.C.A. § 49–2–301(c), (d) (Supp.1995) provide:

(c) The office and position of county superintendent of public instruction is hereby abolished as of July 1, 1992, but any incumbent holder of such office on July 1, 1992, may continue to hold office and exercise the power for the term to which such person was elected by the people or the county legislative body, or until there is a vacancy in the office, whichever occurs first.

(d) In place of the abolished office of the county superintendent of public instruction, each local board of education is authorized to employ a director of schools, as

---

1. The parties plaintiff and parties defendant are set out in the caption. For clarity, plaintiffs will be referred to as Shelby County or County and defendants will be referred to as the State.

2. The intervenors are as noted in the caption and will be referred to as the Board or Intervenor.

3. The 1978 amendments to the Tennessee Constitution replaced the County Courts with the county commissions.

provided for in § 49–2–203, subject to requirements of law. This director of schools may be referred to as "superintendent" but all references to or duties or powers of the former county superintendents of public instruction shall be deemed to be references to or powers or duties of the director of schools. Failure to change a reference to "county superintendent" to "superintendent" or "director of schools" shall not be deemed to continue to revive the former office of position of county superintendent, it being the intention herein to convert the former elected office of superintendent of public instruction to an administrative position filled by the applicable local board of education.

T.C.A. § 49–2–203(a)(14), (15) (Supp.1995) provide:

(a) It is the duty of the local board of education to:

* * *

(14) Develop and implement an evaluation plan for all certificated employees in accordance with the guidelines and criteria of the state board of education, and submit such plan to the state commissioner of education for approval;

(15)(A) Notwithstanding any other public or private act to the contrary, employ a director of schools under a written contract of up to four (4) years' duration, which may be renewed. Any such person transferred during the term of such person's contract shall not have such person's salary diminished for the remainder of the contract period. The board may dismiss the director for cause as specified in this section or in chapter 5, part 5 of this title, as appropriate. The director of schools may be referred to as the "superintendent" and references to or duties of the former county superintendents shall be deemed references to or duties of the director of schools employed under this section. The school board is the sole authority in appointing a superintendent.

(B)(i) Notwithstanding the provisions of subdivision (15)(A) to the contrary, in those local education agencies where the director of schools or school superintendent is not currently appointed by the local board of education, the legislative body of any such county or municipality may, by a two-thirds (⅔) vote taken within one (1) year of elections subsequent to the 1993 election and within one (1) year of subsequent elections, elect to retain the current method of appointing or electing such director or superintendent for an additional term of office or for a period of four (4) years, whichever is less. If this subdivision (a)(15)(B)(i) does not become a law more than one (1) year before the 1993 election for superintendent by the local legislative body of a county, then the legislative body may vote at any time prior to the election of the superintendent to retain the current method of election of the superintendent by the county legislative body. Any subsequent elections shall comply with the provisions of subdivision (a)(15)(B)(ii).

■ Shelby County asserts that the office of county superintendent is a "county office" within the meaning of Article XI, Section 17 of the Tennessee Constitution, and, therefore, the office may be filled only by vote of the people or by the Shelby County Commission. The County contends that the director of schools and the county superintendent of public instruction are the same "county office" as evidenced by the fact that the two positions entail identical responsibilities and duties, and that, therefore, the appointment of the superintendent by the board of education violates the Tennessee Constitution's mandate that county officials be elected by the people or the county commission. The crux of the County's argument is that the office of county superintendent has been unconstitutionally legislated out of existence.

The State, on the other hand, contends that the Legislature has simply determined that duties previously performed by a county officer (the county superintendent of public instruction) should now be performed by a county employee (the director of schools). The State contends that the director of

schools is a county employee rather than a county officer, and, therefore, Article XI, Section 17 of the Tennessee Constitution does not apply to the manner of selecting the director of schools.

The application of Article XI, Section 17, turns upon the question of whether the "director of schools" is a "county office" holder or merely a county employee. In *Cagle v. McCanless,* 199 Tenn. 128, 285 S.W.2d 118 (1955), the Supreme Court of Tennessee considered the question of whether Chapter 31 of the Private Acts of 1955 was unconstitutional under Article XI, Section 17. The Act in question abolished the position of Superintendent of Public Instruction in Hamilton County and vested the superintendent's duties in a "Director of Schools." The Act provided that the position of director of schools would be selected by the county board of education. Prior to the enactment of Chapter 31, the position of county superintendent was filled by the County Court. The plaintiffs alleged that the Act was unconstitutional, because "it is attempting to abolish the office of the Superintendent of Public Instruction in Hamilton County Tennessee, and to create the same office with the identical duties and responsibilities under the name of Director of Schools of said county...." *Cagle,* 285 S.W.2d at 118. The plaintiffs essentially argued that Chapter 31 of the Private Acts of 1955 was an attempt by the Legislature to alter the method of electing the county superintendent by changing the title of the county superintendent to "director of schools."

Our Supreme Court agreed with the plaintiffs and held that the office of director of schools was a "county office," and that, therefore, Article XI, Section 17, required the director of schools to be elected by the County Court.[4] *Id.* at 121. The Court stated,

There is no escape from the conclusion that the "Director of Schools" is the same office as that of County Superintendent of

Schools, and the Legislature has no constitutional authority to transfer the legal duties of one, who is admittedly an officer, to another who claims to occupy a wholly different and inconsistent legal status.

*Id.* In ruling that the position of "Director of Schools" constituted an "office," the Court looked to the language of the Act in question. The Court noted and found it significant that the Act "repeatedly referred" to the "Director of Schools" as an "office." *Id.* at 120. This language is significantly different from the language of the EIA.

In *Loring v. McGinness,* 163 Tenn. 543, 44 S.W.2d 314 (1931), the chairman of the Central Road Commission of Dekalb County brought suit seeking a declaration that Chapter 558 of the Private Acts of 1931 was unconstitutional. Prior to the enactment of Chapter 558, the County Court selected the central road commission for each county, and the members of the commission in turn selected a road commissioner for each civil district in the county. The 1931 Act provided that the control and management of the county roads "shall be vested in a county road commission ... and a county road supervisor employed by the commission." The Act provided that the county road commissioners were to be elected by popular vote, and that they were empowered to "employ" the county road supervisor. Section 6 of the Act provided that the supervisor was subject to the direction of the commission and that the supervisor "shall carry out the instructions of the road commission relative to the opening, closing, and changing of roads, and the building and maintenance of roads, culverts and bridges." *Loring,* 163 Tenn. at 547, 44 S.W.2d at 315. The chairman of the road commission assailed the act on the ground, *inter alia,* that the county road supervisor was a "county officer," and that Article XI, Section 17 of the Tennessee Constitution required that the road supervisor be selected by the people or the County Court.

The Tennessee Supreme Court held that the Act did not violate Article XI, Section 17,

---

4.  At the time, T.C.A § 2346 authorized the County Court to elect the county superintendent of schools.

because the road supervisor was an employee of the county rather than a county officer. The Court based its holding on the fact that the road supervisor's specified duties and powers were subordinate to the county road commission. The Court stated:

> While the supervisor is essential to the system of road control contemplated by the Act of 1931, his specified duties and powers are subordinate, and it is manifest that the rule of local self-government, which is the object of the constitutional provision, is not violated by his employment by a local commission.

> Subordinate powers may be vested in an officer or in an employee of the county, according to the judgment of the General Assembly, as evidenced by its statutes. *State ex rel. v. Buck,* 138 Tenn. 112, 119 [196 S.W. 142]. The legislative intent that the supervisor have the status of a mere employe [sic], and not that of an officer, being expressly declared by the language of the statute, without violation of the spirit or purpose of the Constitution, we would not be justified in holding him to be an officer within the application of the constitutional provision invoked.

*Id.* at 547–48, 44 S.W.2d at 315. (citations omitted).

Prior to the enactment of the EIA, the county superintendent of schools, a county officer, *Cagle,* 285 S.W.2d at 121, was selected by the county commission unless a private act provided for the election of the superintendent by popular vote, T.C.A. § 49–2–301(c), (d) (1990), *amended by* 1992 Tenn. Pub. Acts, ch. 535, § 12. The EIA expressly abolishes the office of county superintendent, T.C.A. § 49–2–301(c) (Supp.1995), and authorizes each local board of education to "employ" a director of schools in place of county superintendent, T.C.A. § 49–2–301(d) (Supp.1995). The EIA also requires that all county boards of education be elected by the people.[5] T.C.A. § 49–2–201(a)(1) (Supp.

1995). The EIA requires that the director of schools be employed for up to four years, T.C.A. § 49–2–203(a)(15)(A) (Supp.1995), and requires the director's actions to be consistent with school board policies, rules, and regulations, T.C.A. § 49–2–301(f)(34) (Supp. 1995).

The Legislature may vest subordinate powers in either an "employee" or an "officer" "according to the judgment of the General Assembly...." *Loring,* 163 Tenn. at 547, 44 S.W.2d at 315; *see also Cross v. Fisher,* 132 Tenn. 31, 46, 177 S.W. 43 (1915) ("There are many subordinate positions and deputies in the conduct of public affairs. It was evidently not intended by the makers of the constitution that all the subordinates and assistants should be elected by the people or the county court."). The Legislature may change the form of government of a particular county, and in so doing it may divest the county commission of all powers not conferred upon it by the constitution. *County of Shelby v. Blanton,* 595 S.W.2d 72, 77 (Tenn. App.1978) (citations omitted). The Legislature may place those divested powers in the county instrumentality of its choice. *Id.*

The office of county superintendent is not a constitutionally created office, rather, it is a legislatively created office. If the Legislature may change the form of county government and divest the county commission of all power not conferred upon it by the constitution, *Blanton,* 595 S.W.2d at 77, it necessarily follows that the Legislature can abolish legislatively created county offices. Our Supreme Court so held in *State ex rel. Cummings v. Trewhitt,* 113 Tenn. (5 Cates) 561, 566, 82 S.W. 480 (1904). The *Trewhitt* Court stated: "The office of county attorney is not provided for in the Constitution, but was created for the county solely by legislative action. There can be no doubt, therefore, of the power of the Legislature to lengthen or shorten the term, or to abolish the office altogether." *Trewhitt,* 113 Tenn. at 566, 82 S.W. at 481–82.

---

**5.** Prior to the enactment of the EIA, county boards of education could be elected by either the county commission or by the people. T.C.A.

§ 49–2–201(a) (1990), *amended by* 1992 Tenn. Pub.Acts, Ch. 535, § 39.

The next issue for our review is whether T.C.A. §§ 49–2–201(a)(1), 49–2–201(b)(1), 49–2–203(a)(15)(B)(i), and 49–2–301(h)(1) are unconstitutional and in violation of Article I, Section 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution as being void for vagueness.

Article I, Section 8 of the Tennessee Constitution provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

In reviewing a void for vagueness claim, the key inquiry is whether the statute is " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Estrin v. Moss,* 221 Tenn. 657, 672, 430 S.W.2d 345, 351 (1968) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)); *City of Clarksville v. Moore,* 688 S.W.2d 428, 429 (Tenn.1985). A statute should not be invalidated if the intention of the Legislature can be intelligently gathered from the statute as a whole, however awkwardly that intention may be expressed. *McKamey v. Pee Wee Mining Co., Inc.,* 498 S.W.2d 94, 96 (Tenn.1973).

█ The County contends that four provisions of the EIA, T.C.A. §§ 49–2–201(a)(1), 49–2–201(b)(1), 49–2–203(a)(15)(B)(i), and 49–2–301(h)(1), are so vague that people of common intelligence must guess at their meaning. T.C.A. § 49–2–201(a)(1) provides in pertinent part:

> Notwithstanding any other law to the contrary, there shall be a board of education elected by the people. Except in counties with a county charter or metropolitan government charter, the board shall consist of no more members than the number of members authorized by general law or pri-

vate act for boards of education in existence on January 1, 1992, or the number of members actually serving on a board on January 1, 1993, except during transition periods following district reapportionment.... In addition, the general assembly may authorize by private act any number of school board members which is not less than three (3) nor more than nine (9).

The County contends that this provision is unconstitutionally vague, because "it is impossible to determine how many members should constitute the boards of education in counties with a county charter...." We disagree.

T.C.A. § 49–2–201(a)(1) sets an outer limit for the number of members which may serve on a county board of education. The statute requires that the board consist of "no more members than the number of members authorized by general law or private act for boards of education in existence on January 1, 1992, or the number of members actually serving on a board on January 1, 1993...." An exception is provided for counties with a charter or metropolitan government charter (as well as other counties "during transition periods following district reapportionment"). Thus, the statute has no effect on the number of board members which a county with a charter may elect. Since this general law does not affect counties with a charter, the intent of the Legislature was obviously to leave provisions of home rule county charters in place with respect to the number of board members. The Shelby County Charter specifically incorporates the provisions of Chapter 381 of the Private Acts of 1923, relating to education.[6] Chapter 381 of the Private Acts of 1923 authorized seven board members to be appointed to the board of education in Shelby County. 1923 Tenn. Priv.Acts, ch. 381, § 2. T.C.A. § 49–2–201(a)(1) simply does not vary the Shelby County Charter provisions relating to the number of members which may sit on the school board. This omission does not render

---

6. Section 6.02B of the Shelby County Charter provides: "The existing Private Act enabling legislation (Charter [sic] 381 of the Private Acts of 1923, as amended) shall remain in full force and effect for education purposes, except as modified in this section."

T.C.A. § 49–2–201(a)(1) unconstitutionally vague.

■ The County also contends that the provisions of T.C.A. §§ 49–2–201(b)(1), 49–2–203(a)(15)(B)(i), and 49–2–301(h)(1) are unconstitutionally vague. These sections establish the time frame in which a county legislative body can exercise a deferral option to extend the county's current method of appointing or electing its board of education, director of schools/school superintendent, and county superintendent of public instruction, respectively. T.C.A. § 49–2–201(b)(1)–(3) (Supp.1995) provide:

> (b)(1) Notwithstanding the provisions of subsection (a), in those school systems operated by a county where the board of education for such system is not currently elected by the people, the legislative body may, by a two-thirds (⅔) vote, taken within one (1) year of elections subsequent to the 1993 election and within one (1) year of subsequent elections, elect to retain the current method of appointing or electing the board of education for such school system.
>
> (2) An election made pursuant to subdivision (b)(1) shall only be valid for one (1) term of office or four (4) years, whichever is less. If the legislative body wishes to retain its current method of appointing or electing the school board in a manner other than as provided in subsection (a) for additional terms of office or four-year periods, it must elect to do so by a two-thirds (⅔) vote at least one (1) year prior to the commencement of each such term or four-year period.
>
> (3) The provisions of subdivision (b)(1) and (2) shall be operable only until September 1, 1996. After September 1, 1996, unless extended by the general assembly, all county boards of education shall be elected pursuant to this section.

T.C.A. § 49–2–203(a)(15)(B), (C) provide:

> (B)(i) Notwithstanding the provisions of subdivision (15)(A) to the contrary, in those local education agencies where the director of schools or school superintendent is not currently appointed by the local board of education, the legislative body of any such county or municipality may, by a two-thirds (⅔) vote taken within one (1) year of elections subsequent to the 1993 election and within one (1) year of subsequent elections, elect to retain the current method of appointing or electing such director or superintendent for an additional term of office or for a period of four (4) years, whichever is less. If this subdivision (a)(15)(B)(i) does not become a law more than one (1) year before the 1993 election for superintendent by the local legislative body of a county, then the legislative body may vote at any time prior to the election of the superintendent to retain the current method of election of the superintendent by the county legislative body. Any subsequent elections shall comply with the provisions of subdivision (a)(15)(B)(ii).
>
> (ii) An election made pursuant to subdivision (a)(15)(B)(i) shall only be valid for one (1) term of office or four (4) years, whichever is less. If a legislative body wishes to retain its current method of appointing or electing the superintendent in a manner other than appointment by the local board of education for additional terms of office or four-year periods, it must elect to do so by a two-thirds (⅔) vote at least one (1) year prior to the commencement of each such term or four-year period.
>
> (C) The provisions of subdivision (a)(15)(B)(i) and (ii) shall be operable only until September 1, 1996. After September 1, 1996, unless extended by the general assembly, all superintendents shall be appointed by the local board of education, pursuant to this section.

T.C.A. § 49–2–301(h)(1)–(3) provide:

> (h)(1) Notwithstanding the provisions of this section to the contrary, in those counties where the county superintendent of public instruction is not currently appointed by the local board of education, the

legislative body of any such county may, by a two-thirds (⅔) vote taken within one (1) year of elections subsequent to the 1993 election and within one (1) year of subsequent elections, elect to retain the current method of appointing or electing such superintendent for an additional term of office or for a period of four (4) years, whichever is less. If this subdivision does not become a law more than one (1) year before the 1993 election for superintendent by the local legislative body of a county, then the legislative body may vote at any time prior to the election of the superintendent to retain the current method of election of the superintendent by the county legislative body. Any subsequent elections shall comply with the provisions of subdivision (h)(2).

(2) An election made pursuant to subdivision (h)(1) shall only be valid for one (1) term of office or four (4) years, whichever period is less. If a county legislative body wishes to retain its current method of appointing or electing the superintendent in a manner other than appointment by the local board of education for additional terms of office or four-year periods, it must elect to do so by a two-thirds (⅔) vote at least one (1) year prior to the commencement of each such term or four-year period.

(3) The provisions of subdivisions (h)(1) and (2) shall be operable only until September 1, 1996. After September 1, 1996, unless extended by the general assembly, all superintendents shall be appointed by the local board of education, pursuant to this section.

If a county decides to exercise a deferral option, T.C.A. §§ 49–2–201, 49–2–203, and 49–2–301 all contain the same language with respect to the manner and the time frame in which the "county legislative body" must exercise the deferral option: "by a two-thirds (⅔) vote taken within one (1) year of elections subsequent to the 1993 election and within one (1) year of subsequent elections...." T.C.A. §§ 49–2–201(b)(1), 49–2–203(a)(15)(B)(i), and 49–2–301(h)(1). Shelby County argues that this language is unconstitutionally vague because a clear reading of the language establishes that there could be a number of possible time frames for holding the two-thirds vote. Shelby County argues that the language is especially vague if the county in question did not hold any elections in 1993. Shelby County also contends that this language is unconstitutionally vague, because the statute does not specify "whether one two-thirds (⅔) vote by the local legislative body should be taken with that decision applying to defer all of the board members' elections or appointments under the old system or whether one two-thirds (⅔) vote should be taken for each particular board member prior to the expiration of that member's term."

■ Our Supreme Court has stated that a court should not "pass on the constitutionality of a statute, or any part of one, unless absolutely necessary for the determination of the case and of the present rights of the parties to the litigation." *Estrin*, 430 S.W.2d at 352 (quoting *West v. Carr*, 212 Tenn. 367, 381, 370 S.W.2d 469 (1963)). A moot case is one which has lost its character as a present, live controversy. *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn.App.1994). A case will generally be considered moot when the prevailing party will be provided no meaningful relief from a judgment in its favor. *Id.* To avoid being dismissed as moot, cases or issues must be justiciable not only when a case is first filed but must remain justiciable throughout the entire course of the litigation, including the appeal.

*Id.*

Resolution of the above constitutional issues will not resolve any of the present rights of the parties as these issues have become moot. The issue of the constitutionality of the deferral provisions of T.C.A. §§ 49–2–201(b)(1), 49–2–203(a)(15)(B)(i), and 49–2–301(h)(1) has become moot, because, regardless of our ruling, Shelby County cannot exercise the various deferral options. All three statutes establish September 1, 1996, as the last day on which a county may exer-

cise the various deferral options. T.C.A. §§ 49–2–201(b)(3), 49–2–203(a)(15)(C), 49–2–301(h)(3). After September 1, 1996, these deferral options are no longer available. *Id.* In addition, as a prerequisite to exercising the deferral options, all three statutes require that the county legislative body must vote to extend the current method of appointing or electing the board of education, director of schools, or superintendent by "elect[ing] to do so by a two-thirds (⅔) vote *at least one (1) year prior to the commencement of each such term or four-year period.*" T.C.A. §§ 49–2–201(b)(2), 49–2–203(a)(15)(B)(ii), 49–2–301(h)(2) (emphasis supplied). Thus, in order to exercise the deferral option to extend Shelby County's current method of appointing the board of education and the superintendent of public instruction (by the Shelby County Commission), the Shelby County Commission would have had to have "elect[ed] to do so by a two-thirds (⅔) vote" by September 1, 1995. Our reading of the record and the briefs indicates that this two-thirds vote was never taken, thus, irrespective of the constitutionality of the above Code provisions, Shelby County may not exercise the deferral options, because it did not comply with the statutes' prerequisites for exercising the deferral options. It should also be noted that even if we did hold that the deferral provisions of T.C.A. §§ 49–2–201, 49–2–203, and 49–2–301 are unconstitutional, such a holding would avail Shelby County nothing, because if the provisions are unconstitutional, no authority would exist for deferring the election provisions of the EIA, and elections would proceed as mandated by the EIA. Since a ruling on the constitutionality of T.C.A. §§ 49–2–201, 49–2–203, and 49–2–301 would not affect any present rights of the parties to this litigation or provide the County with any meaningful relief, we decline to reach these issues.

The County's third issue on appeal is whether the provisions of the Shelby County Charter supersede the provisions of the EIA in Shelby County, relative to elected boards of education.

Although the County concedes that no reported case supports its argument that a county charter provision can prevail over a general law, such as the EIA, it argues that Article VI, section 6.02B of the Shelby County Charter (Charter) supports its contention. Article VI, Section 6.02B of the Charter states:

> The existing private act enabling legislation (Charter [sic] 381 of the Private Acts of 1923, as amended) shall remain in full force and effect for educational purposes, except as modified in this section.

The County contends that this Charter provision incorporated Chapter 381 of the Private Acts of 1923, which mandates that the county board of education be appointed by the County Court (now county commission), and that the selection method set forth in the Charter may not be changed unless the Charter is amended. The County does not dispute that the board of education is subject to the general laws of the state relating to education. County asserts, however, that as to the selection of the board of education and superintendent, the provisions of its Charter override the provisions of the EIA, because the Charter provisions concern a governmental or political function.

It is well established that education is a governmental function, *Knox County v. State ex rel. Nighbert,* 177 Tenn. 171, 147 S.W.2d 100, 102 (1940); *Hamilton County v. Bryant,* 175 Tenn. 123, 127, 132 S.W.2d 639, 640 (1939), and that special statutes affecting counties in their governmental or political capacity are not invalid under the Tennessee Constitution, Article XI, Section 8, if there is a reasonable basis for the Legislature's action, *Johnson City v. Allison,* 50 Tenn.App. 532, 539, 362 S.W.2d 813, 816 (Tenn.App. 1962).

In *Johnson City v. Allison,* this Court upheld the constitutionality of a private act which conflicted with a general law of the state, because it found a *reasonable basis* for the existence of the special act. In 1945, Johnson City organized the Johnson City Power Board (Power Board) consisting of

five members appointed by the city's board of commissioners as provided by the Public Acts of 1935 (current version at T.C.A. § 7–52–101, et seq. (1992 and Supp.1995)). In 1949, a private act was passed, applying exclusively to Washington County (the surrounding county), which provided that two members of the Power Board would reside in Washington County and one in Jonesboro, a neighboring town in the county. Johnson City alleged that the private act was "vicious, unreasonable and arbitrary class legislation in contravention of Article 11, Section 8 of the Constitution of Tennessee in that the 1949 Act undertakes to suspend the general law of the State...." *Allison*, 50 Tenn.App. at 536, 362 S.W.2d at 814–15. This Court held that the major increase in the rural population served by the Power Board constituted a reasonable basis for the existence of the private act. This Court stated:

> [The City], by organizing its power board under the general act of 1935, did not acquire constitutional immunity from the future exercise of the Legislature of its power to change the composition of the Board whenever warranted by a change in conditions deemed to involve the health and economic well-being of the territory it serves.

50 Tenn.App. at 538, 362 S.W.2d at 815.

■ The County asserts that the special provisions of its charter supersede the general law of the EIA relating to selection of the board of education members, because the selection is a governmental or political function. In support of this assertion, County primarily relies upon cases dealing with subsequent private acts which modify or contradict previously passed public acts. We think this reliance is misplaced and actually sidesteps the controlling proposition.

County takes the position that since the State passed enabling legislation for "home rule," and County acted upon it, the State is powerless to change it. We disagree with such a position. The power of the State in its relations with the counties is illustrated in *State ex rel Bell v. Cummings*, 130 Tenn. (3

Thompson) 566, 172 S.W. 290 (1914). In *Cummings*, the 1909 Legislature passed an act authorizing Hamilton County to issue bonds to build a road across Lookout Mountain. Although the bonds were issued and the money raised, the money was unused, and in 1913, the Legislature passed an act amending the 1909 act to provide for the diversion of the funds from the Lookout Mountain road to other roads in the county. When the county financial agent would not comply with the mandate of the 1913 act, suit for mandamus was filed. The county financial agent argued that the 1913 act was unconstitutional because the Legislature had no power to divert the funds after the county had voted, issued, and sold the bonds for the specific purpose of the Lookout Mountain highway. In sustaining the validity of the 1913 act, our Supreme Court stated:

> This involves a consideration of the relation sustained by a county as a public corporation to the state. In *Demoville v. Davidson County*, 87 Tenn. (3 Pickle) 214, 225, 10 S.W. 353, 356, it was said:
>
> "The county is but an emanation from the state. It does not exercise any power or franchise under any contract between itself and the state. The latter creates, and it may destroy. The state delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes."
>
> In the absence of constitutional restraints, and our constitution contains none, it was declared in *Luehrman v. Taxing District*, 2 Lea (70 Tenn.) 425, 438, the maxim of republican government that local affairs should be managed in the local district is subject to such exceptions as the legislative power shall see fit to make.
>
> "The Legislature has the power to do whatever is not expressly, or by necessary implication, forbidden by the Constitution." (citations omitted).
>
> It follows that a county as a mere arm of the sovereign power can have, as against the legislative power of the sovereign, no vested rights in the powers conferred upon it for governmental purposes....

130 Tenn. at 569, 172 S.W. at 290–91.

There is no constitutional provision that prohibits the Legislature from enacting laws

which in some form or fashion are contrary to a local law set forth in a county's home rule charter. To the contrary, there is ample authority for the proposition that when the Legislature acts through general legislation, the Legislature retains power over a county, despite the county's home rule status, and this is true even with respect to functions that are governmental or political in nature. *Cummings,* 130 Tenn. at 569, 172 S.W. at 290–91; *Henderson County v. Wallace,* 173 Tenn. (9 Beeler) 184, 189–90, 116 S.W.2d 1003, 1005 (1938). Clearly, under the Tennessee Constitution, it is the Legislature that gives counties the right to establish home rule. Tenn. Const. art. VII, § 1. Because it is the Legislature that gives counties this right, it is the Legislature that may take the right away. *Cummings,* 130 Tenn. at 569, 172 S.W. at 290–91.

Further evidence of the Legislature's power to affect home rule counties, through the passage of general laws, is found in the language of T.C.A. § 5–1–210 (1991), which states:

The proposed county charter shall provide:

(1) For the creation of an alternative form of county government vested with any and all powers which counties are, or may hereafter be, authorized or required to exercise under the Constitution and general laws of the state of Tennessee, and any and all powers and duties of such county which are required or authorized by private acts effective on the date of ratification of such charter. . . .

This language, with minor differences, also appears in Article I, section 1.02 of the Shelby County Charter.[7] It is evident that the Legislature intended that the charters of home rule counties vest the county only with such powers as the county is "authorized or required to exercise under the Constitution and *general laws* of the state of Tennessee,"

T.C.A. § 5–1–210 (emphasis added). There is no authority in either the Tennessee Constitution or the home rule enabling statutes, T.C.A. § 5–1–201 *et seq.* (1991 & Supp. 1995), for the proposition that a county is not subject to the general laws of this State simply because it elects to be a home rule county.

The County also contends that *Robinson v. Briley,* 213 Tenn. (17 McCanless) 418, 374 S.W.2d 382 (1963) supports its position that provisions of a charter may supersede a general law. This case is distinguishable, because first, it deals with the charter of a metropolitan government under Article XI, Section 9, rather than that of a county government under Article VII, Section 1. Second, *Robinson* considers a situation in which a charter provision modified a general law passed prior to the enactment of the charter; not, as in the present case, a county which seeks by way of a charter provision to avoid a new general law. In *Robinson,* the metropolitan charter altered duties of the county trustee which had been established under previously enacted general law. The court found that the provisions of the charter were not unconstitutional because it is expected, when a city and county are consolidated, that overlap between the two may require changing governmental functions of county officers which were established by a general law predating the charter. 374 S.W.2d at 385.

Based on the foregoing, we hold that provisions of a county's home rule charter which conflict with a general law of the State do not supersede the general law, irrespective of the fact that those provisions relate to matters in which the county acts in a governmental or political capacity.

■ We next address the issue presented by the Intervenors. The Board asserts that, should this Court find that the other provi-

---

7. Article II, section 2.01 of the Charter similarly provides:

> The legislative power includes all lawful authority . . . of a legislative nature which is vested in the county by the Constitution, general statutes, or special, local or private acts of the General Assembly or this Charter. The Legislative Branch may adopt any ordinance or resolution which is not in conflict with the Constitution or general laws of the State of Tennessee, or this Charter.

sions of T.C.A. § 49–2–201 *et seq.*, the Education Improvement Act of 1992, are constitutional, it should also find that § 49–2–201(c) is valid. The State has declined to defend the constitutionality of T.C.A. § 49–2–201(c). *See, e.g.,* Op.Att'y. Gen. 91–49 and Op.Att'y.Gen. 92–38. Since we find that the EIA is constitutional, we now consider the validity of T.C.A. § 49–2–201(c), which states:

> Only persons who are residents of the area served by a local education agency are eligible to serve on the school board in counties with populations of seven hundred thousand (700,000) or more, according to the 1990 Federal Census or any subsequent Federal Census.

The Board argues that this provision, despite its population classification, is general in scope and application and thus does not violate Article XI, Section 9 of the Tennessee Constitution (the "Home Rule Amendment") which generally prohibits legislation which is "local in form or effect." Article XI, Section 9 provides, in pertinent part:

> [A]ny act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity .shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

If T.C.A. § 49–2–201(c) is a public and general, as opposed to a local law, Article XI, Section 9 does not apply, and approval by the legislative body or electorate is not required. *Bozeman v. Barker,* 571 S.W.2d 279, 282 (Tenn.1978).

In *Farris v. Blanton,* 528 S.W.2d 549 (Tenn.1975), the Tennessee Supreme Court held that Chapter 354 of the Public Acts of 1975 was invalid, because the law was local in effect and application but was not conditioned upon approval by a two-thirds vote of the electorate as required by Article XI,

Section 9. *Id.* at 556. The statute under consideration in *Farris* concerned the constitutionality of a run-off election in counties where a mayor is the head of the county government (Shelby County being the only county authorized to have a county mayor). In considering the constitutionality of the statute, the Court stated:

> [W]e must determine whether this legislation was designed to apply to any other county in Tennessee, for if it is potentially applicable throughout the state it is not local in effect even though at the time of its passage it might have applied to Shelby County only. But in determining potential applicability we must apply reasonable, rational and pragmatic rules as opposed to theoretical, illusory or merely possible considerations.

*Id.* at 552.

▮ Clearly, the fact that a statute affects only a single county at the time of enactment is not dispositive of its constitutionality. *Civil Serv. Merit Bd. v. Burson,* 816 S.W.2d 725, 729 (Tenn.1991). In *Burson,* the Court upheld the constitutionality of statutes containing population brackets which made uniform the procedures and qualifications for the nomination of persons serving on municipal civil service boards. The Court held that the legislation was general, despite the fact that it only applied to counties with over 300,000 people, which at the time included Shelby, Davidson, and Knox Counties. The Court found that the statute affected the three most populous counties in the state and would affect additional counties as the population increased. *Id.* at 730.

Similarly, in *Bozeman v. Barker,* 571 S.W.2d 279 (Tenn.1978), the Court upheld the constitutionality of legislation limited by population brackets to Knox and Davidson Counties. *Id.* at 283. In *Barker,* the legislation in question provided for minimum annual salaries for certain court officers. In finding that the statute did not violate Article XI, Section 9, the Court stated:

> The questioned act is certainly public and general in form.

We hold it is also public in effect and application, not private or local in effect. It presently applies to two populous counties. It can become applicable to many other counties depending on what population growth is reflected by any subsequent Federal Census. The compensation of county officials has been held not to be a private or local affair within the meaning and intent of Article XI, § 9. . . .

*Id.* at 282.

There is a strong presumption that acts passed by the Legislature are constitutional. *Barker,* 571 S.W.2d at 282. Like the legislation considered in *Barker* and *Burson,* T.C.A. § 49–2–201(c) is potentially applicable to numerous counties in the state. Under the standards articulated by the Supreme Court in *Farris, Barker,* and *Burson,* we hold that T.C.A. § 49–2–201(c) is general in form and effect, and is not unconstitutional. Therefore, local approval under Article XI, Section 9 is not required.

The judgment of the trial court holding T.C.A. § 49–2–201(c) unconstitutional is vacated, and the judgment is otherwise affirmed. Costs of appeal are assessed against appellants.

HIGHERS and FARMER, JJ., concur.