MARY ALICE (WILLIAMS) GRIFFIN,    )
                                  )
        Plaintiff/Appellee,       )
                                  )          Appeal No.
vs.                               )          01-A-01-9802-CH-00084
                                  )
LACY FLOYD GRIFFIN,               )          Montgomery Chancery
                                  )          No. 95-08-0149
        Defendant/Appellant.      )

**FILED**

October 27, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE MONTGOMERY COUNTY CHANCERY COURT

AT CLARKSVILLE, TENNESSEE


THE HONORABLE CAROL A. CATALANO, CHANCELLOR


THOMAS R. MEEKS
137 Franklin Street
Clarksville, Tennessee  37040

GREGORY D. SMITH
One Public Square, Suite 321
Clarksville, Tennessee  37040
        ATTORNEYS FOR PLAINTIFF/APPELLEE


FRANK J. RUNYON
P. O. Box 1023
Clarksville, Tennessee  37041
        ATTORNEY FOR DEFENDANT/APPELLANT


AFFIRMED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

Lacy Floyd Griffin married Mary Alice Williams in November of 1964. They had been married for thirty-one years, when Mrs. (Williams) Griffin filed suit for divorce from the bonds of matrimony on the grounds of irreconcilable differences and cruel and inhuman treatment. The complaint was filed August 29, 1995. The parties executed a Marital Dissolution Agreement on August 30, 1995. Mr. Griffin was not represented by counsel in the divorce. The agreement reads in pertinent part:

> The HUSBAND shall be responsible for making the house payments in the amount of $469.44 per month until paid in full and hold the WIFE harmless from any remaining indebtedness owed and outstanding on the real property located at 112 Bagsby Hill Lane, Stewart County, Dover, Tennessee 37058. HUSBAND shall indemnify WIFE for all damages inclusive of attorneys fees for his failure to make and pay all remaining indebtedness owed on said real property.

Though the complaint for divorce listed no children born of the marriage, Mr. and Mrs. Griffin had two adult children of the marriage. At the time of the divorce, Mr. Griffin was suffering from miscellaneous maladies due to his age and line of work. The Final Decree of Divorce was entered in this case on October 30, 1995. On March 10, 1997, a full eighteen months after the original final decree, Mr. Griffin filed a "Petition to Terminate Payment" stating, inter alia:

> 3. In support of same the Petitioner would allege that he is in ill health and the making of [the house payment] creates an undue hardship upon him. Further, the Petitioner would state that the reason the Petitioner agreed to pay said payments was because at the time the Respondent was unable to do so. Since then the Respondent has remarried on August 2, 1996 and she and her husband are both residing in the residence. Therefore your Petitioner alleges that [Respondent] is receiving support from other sources and is well able to manage the payment on the residence at this time.

On June 20, 1997, Appellant filed a motion to set aside the Final Decree of Divorce on the following grounds:

1. Lacy Floyd Griffin and Plaintiff/ Respondent, Mary Alice Williams (Griffin - Earhart), were married on November 1964.

2. Tim Griffin was born on 12/7/68 and lived as the biological son of Lacy Floyd Griffin and Mary Alice Williams (Griffin - Earhart).

3. Donald Griffin was born on 10/25/65 and lived as the biological son of Lacy Floyd Griffin and Mary Alice Williams (Griffin - Earhart).

4. Mary Alice Williams (Griffin - Earhart) was married and divorced from Eddie Earhart prior to marrying Lacy Floyd Griffin..

5. Mary Alice Williams (Griffin - Earhart) and Earhart had a continuous affair which lasted throughout the marriage of Mary Alice Williams (Griffin - Earhart) and Lacy Floyd Griffin.

6. Lacy Floyd Griffin was experiencing severe chest pains during the latter part of 1995, and sought medical treatment at St. Thomas Hospital in Nashville, Tennessee.

7. While Lacy Floyd Griffin was seeking treatment for said chest pains, Mary Alice Williams (Griffin - Earhart) filed a complaint for divorce, seeking the divorce on the grounds of 1. Irreconcilable Differences, and 2. Cruel and Inhuman Treatment.

8. Mary Alice Williams (Griffin - Earhart) then, through her attorney Thomas Meeks, caused a "Marital Dissolution Agreement" (MDA) to be drawn. The MDA cited the sole ground for divorce as being "Irreconcilable Differences," pursuant to T.C.A. 36-4-101.

9. Mary Alice Williams (Griffin - Earhart) then drove Lacy Floyd Griffin to the office of her attorney, and asked him to sign the MDA.

10. Lacy Floyd Griffin has an eighth-grade education, has difficulty reading and at the time he was asked to sign the MDA was experiencing further physical problems with his eyes.

11. Mary Alice Williams (Griffin - Earhart) was aware of the facts recited in paragraph ten, and asked Lacy Floyd Griffin to sign the MDA.

12. Lacy Floyd Griffin did not thoroughly read the MDA and the MDA was not read to him.

13. The terms of the MDA were oppressive, unconscionable, extremely one-sided, and not true.

14. The MDA recites that "no children were born of the marriage," and this is not true.

15. Donald Griffin was born of the marriage, and Lacy Floyd Griffin is his biological father.

16. Tim Griffin was born during the marriage of Lacy Floyd Griffin and Mary Alice Williams (Griffin - Earhart), but recently, since the filing of the "Final Decree of Divorce," Mary Alice Williams (Griffin - Earhart) told Tim Griffin that Eddie Earhart was his father.

17. Tim Griffin and Donald Griffin had always known Lacy Floyd Griffin to be their father, and both were supported and loved by Lacy Floyd Griffin as a father.

18. Mary Alice Williams (Griffin - Earhart) has never told Lacy Floyd Griffin that Tim Griffin was not his son.

In essence, after the divorce decree was entered in this case, Mr. Griffin discovered that one of the adult children born during his marriage might not be his. He also discovered that his wife had been conducting an ongoing affair; that the paramour is now her new husband; and that the couple now occupy his former home. There is no doubt that the facts before this court paint a sad picture.

The most unfortunate part of this story, however, is that under these circumstances, the allegations raised in the instant petition do not rise to the level required.

Rule 60.02 of the Tennessee Rules of Civil Procedure provides in pertinent part:

> 60.02 Mistakes - Inadvertence - Excusable Neglect - Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal

representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Tenn. R. Civ. P. 60.02 (1998).


Reading only Appellant's motion, the request to set aside the decree of the trial court sounds clearly in fraud. The "statutory" period in which to bring an action has lapsed. Appellant attempts to bypass this obstacle by asserting that his motion is actually grounded in the "any other reason" portion of the rule. Even were this court persuaded by such an argument, relief would still be beyond Appellant's reach. In the case at bar, Appellant did not appear to defend his wife's divorce petition. His signature appears in the Acceptance of Service dated August 19, 1995. In addition, Mr. Griffin forwarded a note to the trial court, bearing the file date of October 2, 1995, in which he stated "I Lacy F. Griffin know today the 2nd of Oct. is court date. I agree to the papers we signed. s/Lacy F. Griffin."

The well-established rule in this jurisdiction is that the decision whether or not to set aside a default judgment is within the sound discretion of the Chancellor, which will not be overturned absent a showing of abuse of that discretion. *Turner v. Turner*, 739 S.W.2d 779, 780 (Tenn. Ct. App. 1986), (Citing *Moore v. Palmer,* 675 S.W.2d 192, 194 (Tenn. Ct. App. 1984)). While the judgment in the instant case may not technically be a default judgment, it is a judgment entered without the benefit of the presence of the aggrieved party. The above rule applies in this situation.

It seems that Mr. Griffin, by the instant motion, attempted to persuade the trial court to reexamine the fairness of the original Marital Dissolution Agreement after failing to appear himself to question the document in the first instance. In circumstances such as these, this court is loath to readdress the trial court's decision. *See Brown v. Brown*, 863 S.W.2d 432 (Tenn. Ct. App. 1993). *See also Day v. Day*, 936 S.W.2d 931 (Tenn. Ct. App. 1996).

Under the authorities cited above, this court affirms the trial court's dismissal and remands the cause for such further proceedings as are necessary. Costs on appeal are taxed against Appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, PRESIDING JUDGE,M.S.

_____
WILLIAM C. KOCH, JR., JUDGE