IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 22, 2008 Session

## JAMES D. JACKS v. CITY OF MILLINGTON BOARD OF ZONING APPEALS

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-0914-1     Walter L. Evans, Chancellor**

_____

**No. W2008-00210-COA-R3-CV - Filed January 8, 2009**

_____

On appeal, the crux of Appellant's argument is that his local zoning board erred in determining that he could not use two structures on his property for human occupation. In support of this contention, Appellant argues that when reviewing the zoning board's decision, the trial court applied the wrong standard of review, misconstrued the zoning ordinances, excluded admissible evidence, and should have applied the doctrines of laches and equitable estoppel. On appeal, Appellee also asserted that Appellant's argument was moot. Because we do not agree that Appellee's case is moot, we review the merits of Appellant's claim. Finding no error, however, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

James D. Jacks, *Pro se*.

Timothy David Patterson and Edward J. McKenney, Jr., Memphis, Tennessee, for the appellee, City of Millington Board of Zoning Appeals.

**OPINION**

*Background*

Plaintiff/Appellant James D. Jacks ("Mr. Jacks") purchased property in the city of Millington, Tennessee in September 2003. According to Mr. Jacks, he purchased the property as two separate

lots; one lot abutted Easley Street and contained two structures referred to as 5049 and 5045[1] (hereinafter referred to as "Lot 1"). The second lot was landlocked adjacent to, but behind, Lot 1 (hereinafter referred to as "Lot 2"); Lot 2 included a third structure built in 1943 and referred to as 5047. The parties agree that at all times relevant to this proceeding 5049 has been used as a residence. Mr. Jacks alleges that when he purchased the property, the former owner had utilized 5045 and 5047 as rental property. The tenant living in 5047 moved out in December of 2003, and Mr. Jacks began making repairs to that structure. In September 2004, 5047 sustained heavy water damage. Mr. Jacks sent three letters in the spring of 2004 to the Millington Mayor requesting assistance to fix the city-caused damage and emphasizing the urgency of repairing the property because he had a potential lessee. In the fall of 2005, Mr. Jacks sued the City of Millington Water Department for the water damage to 5047. Mr. Jacks' tenant in 5045 vacated the premises in November 2005, and Mr. Jacks testified that he applied for a city plumbing permit to replace the water heaters in both 5045 and 5047 in March 2006. Each of the three buildings had a separate water line, and eventually the City refused to supply water to 5045 and 5047. Millington's zoning board denied the plumbing permit and Mr. Jacks continued the legal proceedings from which this appeal stems.

### *Procedural History*

Mr. Jacks appeared before the Millington Board of Zoning Appeals ("Board of Zoning Appeals", "Zoning Board", or "Board") to contest the City's decision to deny him a plumbing permit.[2] At the hearing, Millington's code enforcement office asserted that it denied Mr. Jack's permit request because Mr. Jacks intended to use 5045 and 5047 for human occupation. The Board of Zoning Appeals issued a written ruling affirming the enforcement office's decision and denying any requested variance to allow human occupation in 5045 and 5047. The Zoning Board stated that Lot 2 was not a legal lot under the City's current zoning ordinance because it did not front a street or road. Because it found that Lot 2 was not a legal lot, it considered Lot 2 in conjunction with Lot 1. The Zoning Board then reasoned that the current ordinance only permits one principal residence per lot so both 5045 and 5047 could only be used as accessory buildings, which do not permit human occupation. The Zoning Board also stated that, under the ordinance in effect prior to the current ordinance, the use of 5045 and 5047 as a residence was nonconforming, such nonconforming uses became unlawful in 1981, and 5045 and 5047 could not lawfully be grandfathered in to the current ordinance for human occupation because they were not lawfully used when the ordinance went into effect in 1986. In addition, the Board found that, even if the property could have been lawfully continued in 1986 as a nonconforming use, Mr. Jacks could not lawfully reestablish using 5047 for human occupation because he had discontinued that use for more than 6 months.

---

[1]We, like both parties throughout the litigation, refer to each free-standing structure by its separate mailing address.

[2]Although Mr. Jacks initiated this claim in chancery court, the trial court permitted him to amend his complaint so that he could first exhaust his administrative remedies by appealing the denial of his requested plumbing permit to the Board of Zoning Appeals.

## Issues

Mr. Jacks, proceeding *pro se*, raises several issues upon appeal, and we restate them here in the order we believe is most logical and using the language that best comports with the applicable statutes. First he alleges that the trial court applied an incorrect standard of review when it assessed the Board of Zoning Appeals' determination. Second, we review Mr. Jacks' contention that the Board of Zoning Appeals erroneously denied his request for a permit to install water heaters at address 5045 and 5047 because it misconstrued the current and prior zoning ordinances. Third, Mr. Jacks asserts that the trial court erred by excluding evidence. Mr. Jacks asserts that laches and equitable estoppel apply to bar the Board of Zoning Appeals from arguing that 5045 and 5047 cannot be used for human occupation because the City of Millington was on notice of the nonconforming use for years but nevertheless continued to supply water. The Defendant/Appellee, City of Millington Board of Zoning Appeals, raises the additional issue that this proceeding is moot; because we disagree, we address this jurisdictional question last.

## Standard of Review

A party seeking to overturn a determination by a zoning board does so by filing a common law writ of certiorari. *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983). A writ of certiorari is an order from a superior court to an inferior tribunal to send a complete record up for review. *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001). A trial court's review of an administrative agency's decision pursuant to a petition for common law writ of certiorari is limited to a determination whether the administrative body acted within its jurisdiction or acted illegally, arbitrarily, capriciously, or fraudulently. *Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson County*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006); *Hutcherson v. Lauderdale County Bd. of Zoning Appeals*, 121 S.W.3d 372, 375 (Tenn. Ct. App. 2003). Because an administrative decision that is unsupported by the evidence is arbitrary, a trial court, likewise, must inquire as a question of law whether there is material evidence to support the local board's decision. *Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson County*, 213 S.W.3d 898, 904 (Tenn. Ct. App. 2006). "[M]aterial evidence" is such "relevant evidence that a reasonable person would accept as adequate to support a rational conclusion." *Id.* On appeal, our entire review of the trial court's determination is *de novo* without any presumption of correctness. *Id.* Moreover, our review of the evidence presented to the administrative board is no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

When inquiring whether an administrative decision is illegal, arbitrary, or fraudulent, a trial court should consider whether a board misconstrued applicable statutes and ordinances. *421 Corp. v. Metro Gov't of Nashville and Davidson County*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000). As now Justice Koch once wrote for this Court, it is the courts that

> must ultimately take responsibility for construing statutes and ordinances. While they may defer to fairly debatable interpretations of ambiguous statutes and

-3-

ordinances, they will not hesitate to set an interpretation aside if it is arbitrary and capricious, if it is contrary to the drafters' intent, or if it undermines the statutes's or ordinances's validity.

*Whitemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 16 (Tenn. Ct. App. 1992) (internal citations omitted). A court reviewing an administrative board should not, therefore, substitute a more preferential interpretation of the ordinances so long as the board's choice has a reasoned basis. *Brunetti v. Bd. of Zoning Appeals of Williamson County*, No. 01A01-9803-CV-00120, 1999 WL 802725 (Tenn. Ct. App. 1999). If the language in an ordinance is clear, then courts should enforce it as written. *421 Corp.*, 36 S.W.3d at 475. If the language is ambiguous, however, then the courts should construe the ordinance according to those principles customarily used for statutory construction. *Id.* This requires reading the ordinance "'without any forced or subtle construction which would extend or limit its meaning.'" *City of Red Bank v. Phillips*, No. E2006-02267-COA-R3-CV, 2007 WL 4460223, at *3 (Tenn. Ct. App. Dec. 20, 2007) (*no perm. app. filed*) (quoting *Nat'l Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991)). This Court also maintains that it will "resolve ambiguities in favor of the property owner's rights to the unrestricted use of his or her property." *421 Corp.*, 36 S.W.3d at 475.

On appeal, Mr. Jacks alleges that the trial court did not apply the correct judicial standard for reviewing the Board of Zoning Appeals' decision. Specifically, Mr. Jacks asserts that when he argued that the Zoning Board misconstrued the ordinance, the trial court responded by stating "And even if it were - - even if [the Zoning Board] ruled erroneously, this Court doesn't have the authority to right their wrong, as I understand the law." As this Court has previously articulated, however, "'[a] Court speaks only through its written judgments." *Gurkin's Drive-In Market v. Alcohol and Licensing Comm'n of Collierville*, No. W2002-01648-COA-R3-CV, 2003 WL 1618086, at *5 (Tenn. Ct. App. Mar. 21, 2003) (*no perm. app. filed*) (quoting *Evans v. Perkey*, 647 S.W.2d 636, 641 (Tenn. Ct. App. 1982)). In its final judgment the trial court reviewed the Board of Zoning Appeals' decision to determine whether it acted illegally, arbitrarily, or fraudulently, which included considering whether there was material evidence to support the Zoning Board's decision. Regardless of what was said at the hearing, the trial court stated in its Final Judgment that courts should interpret ordinances pursuant to the principles used to interpret statutes, and the trial court specifically found that the Board of Zoning Appeals' "interpretation of the Zoning Ordinance is consistent with the language and purposes of the ordinance." Because the Final Judgment indicates that the trial court did review whether the Board of Zoning Appeals misconstrued the zoning ordinances, we find that the trial court applied the correct standard of review.

### *Interpretation of the Ordinances*

On appeal, Mr. Jacks also argues that the Zoning Board erred by classifying 5045 and 5047 as accessory buildings, and thereby prohibiting him from using these buildings for human occupation. Mr. Jacks claims that both 5045 and 5047 were legally constructed at the time they were built but admits that both structures may be currently nonconforming because subsequent ordinances barred the construction of a building on a landlocked lot (Lot 2) and more than a single residence

on a lot (Lot 1). In support of his argument, Mr. Jacks first asserts that by definition 5045 and 5047 cannot be accessory buildings because 5047 exists on its own lot and both 5045 and 5047 are independent dwellings, so neither structure could be an accessory to the principal residence at 5049. Secondly, Mr. Jacks argues that the current zoning ordinance ("1986 Ordinance") expressly permits the use of these properties as residences, and, thirdly, Mr. Jacks claims that the prior zoning ordinance ("1961 Ordinance') permitted 5045 and 5047 to be used for human occupation and that the 1986 Ordinance grandfathered in that use.

Although Mr. Jacks cites to a Pennsylvania case for the proposition that a property's use is permitted so long as the regulations do not specifically prohibit that use, each district is governed by its own unique ordinances, and the 1986 Millington Ordinance prohibits any use of a building or land unless that use is expressly permitted. Millington, Tenn., Code 14-401(1) (2005); *see City of Knoxville v. Brown*, 260 S.W.2d 264, 267 (Tenn. 1953). The 1986 Ordinance Section 14-401(1) states "[n]o building or land shall hereafter be used and no building or part thereof shall be erected, moved or altered unless for a use expressly permitted by and in conformity with the regulations herein specified for the district in which it is located, except as hereinafter provided;" the 1986 Ordinance refers to this type of use as a "permitted use"[3] Millington, Tenn., Code 14-401(1) (2005). Section 14-401(2) then provides that uses, buildings, and structures not expressly permitted by the 1986 Ordinance shall only be lawful if they already lawfully existed at the time that Millington enacted the 1986 Ordinance; the Ordinance refers to these uses as nonconforming uses. Millington, Tenn., Code 14-401(2) (2005). Mr. Jacks may only use 5045 and 5047 for human occupation if this use is permitted by the 1986 Ordinance or qualifies as a lawful nonconforming use.[4] Millington, Tenn., Code 14-401(1), 14-401(2) (2005).

Before we inquire whether 5045 and 5047 may be used for human occupation, we note that Mr. Jacks' arguments rely strongly upon the proposition that the "non-conformance of the physicalities of the property does not affect the conformance of the use." Mr. Jacks cites authority for this proposition, but these cases merely explain that there is a distinction between nonconforming structures and nonconforming uses. "There are significant self-evident differences between nonconforming uses and nonconforming structures,"[5] *Moore v. Metropolitan Board of Zoning*

---

[3]The 1986 Ordinance states "[t]he term 'permitted use' or its equivalent shall not be deemed to include any non-conforming [sic] use." Millington, Tenn., Code 14-501(111) (2005).

[4] The lawful use of property existing before the enactment of a zoning ordinance is generally referred to as a "nonconforming use" and is "grandfathered" when the ordinance specifically exempts the use on the grounds that the property was being used that way when the ordinance took effect. *Lafferty v. City of Winchester*, 46 S.W.3d 752, 754 n. 1 (Tenn. Ct. App. 2000) (internal citations omitted). The 1986 Ordinance defines a "nonconforming use" in accord with this denotation as "[a]ny use of buildings or premises which lawfully existed prior to the adoption of, or amendment of the zoning ordinance, but which no longer comply [sic] with the use regulations of the district in which it is located." Millington, Tenn., Code 14-501(75) (2005).

[5]Few sources, however, disclose what these self-evident differences are. One treatise explains that

(continued...)

*Appeals*, 205 S.W.3d 429, 437 (Tenn. Ct. App. 2006), but it does not logically follow from this distinction that the character or size of a lot cannot *affect* how a lot is used if the ordinance so prescribes. To the contrary, zoning regulations often limit how a lot or structure may be used based on where the property is, how big the property is, how big the structure is, etc. Mr. Jacks characterizes Lot 2 as a nonconforming lot and 5045 as a nonconforming single family dwelling and then, relying upon the faulty premise that this cannot affect the use of the property, argues that 5045 and 5047 are single family dwellings which may be used for human occupation. He does not, however, inquire into whether the ordinances prohibit this type of use on nonconforming lots and structures. Mr. Jacks' approach circumvents the real questions at hand - - whether the 1986 Ordinance permits a structure to be used as a residence on a landlocked lot and whether an owner may use two structures for human occupation on a single lot in an R-2 Residential District. Despite how Mr. Jacks characterizes the lots or structures, we address his argument with these two questions in mind.

### A. Permitted Use

Our first inquiry is whether using 5045 and 5047 for human occupation is a permitted use pursuant to the 1986 Ordinance. Mr. Jacks argues that the 1986 Ordinance, Section 14-603 expressly permits him to use 5045 and 5047 for human occupation. Section 14-603 permits property in an R-2 Residential District to be used for single-family dwellings. Millington, Tenn., Code 14-603(1) (2005). A single-family dwelling is a "building designed for or occupied exclusively by one (1) family which has no connection by a common wall to another building or structure similarly designed." Millington, Tenn., Code 14-501(27) (2005). Because 5045, 5047, and 5049 are all free-standing buildings designed to house a single family, Mr. Jacks asserts that the 1986 Ordinance permits him to use them all as single-family dwellings.

The trial court found, however, that 5045 could not be used for human occupation because the 1986 Ordinance only permitted one dwelling per lot. The trial court relied upon the Board of Zoning Appeals' interpretation that Section 14-603 of the 1986 Ordinance permits only one principal residence per lot in an R-2 Residential District. Upon reviewing the record, we find that the Board of Zoning Appeals' interpretation of the ordinances regarding the use of 5045 for human occupation is consistent and that the 1986 Ordinance does not permit Mr. Jacks use of 5045 for human occupation. Although Section 14-603(1) permits the use of lots in a R-2 Residential District for single-family dwellings, Section 14-603(10) limits lots used as single-family dwellings to one principal building. Millington, Tenn., Code 14-603(10) (2005). The Board of Zoning Appeals determined that Section 14-603, therefore, limited Mr. Jacks to use only one building on Lot 1 as a

---

[5](...continued)

[w]hile the term "nonconforming use" is universally and generically used, it should be noted that while the use itself — residential, commercial, industrial — may conform to the zoning district, an existing structure or even a parcel of raw land may not conform to development regulations, for example, setbacks, minimum lot size or frontage requirements and therefore be "nonconforming."

E.C. Yokley, Zoning Law and Practice, 22-1 n.1 (Lexis Nexis 2003).

principal residence. Because the parties agreed that 5049 is used as a principal residence, 5045 could not also be considered a principal residence. Section 14-603(1)(b) permits accessory buildings on R-2 Residential District lots, and the Board of Zoning Appeals, therefore, found that 5045 could lawfully be used as an accessory building. Millington, Tenn., Code 14-603(1)(b) (2005). Because accessory buildings, however, may not be used for human occupation, Mr. Jacks still may not use 5045 to house people. Millington, Tenn., Code 14-603(12)(a) (2005). We agree with the trial court that the Board of Zoning Appeals' interpretation is consistent with the provisions of the 1986 Ordinance, and we find that using 5045 for human occupation is not a permitted use according to the 1986 Ordinance.

Because he contends that 5047 is on a separate lot from 5045 and 5049, Mr. Jacks' alternative argument is that 5047 is the sole building on Lot 2, that 5047 is a principal residence, and the 1986 Ordinance, therefore, permits 5047's use for human occupation as a single family dwelling. The Board of Zoning Appeals found that Lot 2 was not a legal lot because it was landlocked. The Board, therefore, considered Lot 2 in conjunction with Lot 1, applied the same analysis to 5047 and 5045 (discussed above), and found that 5047 must also be an accessory building. The trial court further articulated that 5047 was not a legal lot because the 1986 Ordinance "prohibits structures 'erected on a lot which does not abut at least one public street.'"

The parties agree that Lot 2 is landlocked and does not abut a public street. Mr. Jacks contends, however, that Lot 2 is a legally separate lot and that the 1986 Ordinance's provision prohibiting building a structure on landlocked lots does not make the use of 5047 for human occupation nonconforming. The precise wording Section 14-401(3) is "[n]o structure shall be erected on a lot which does not abut at least one public street." Millington, Tenn., Code 14-401(3) (2005). Mr. Jacks argues that this language merely prohibits *building* a structure on a landlocked lot and does not limit how preexisting structures may be *used*.

In construing this provision, we consider that the express intent of the 1986 Ordinance is to "eliminate as expeditiously as is reasonable, of . . . existing building, structures, or uses that are not in conformity with the provisions of the zoning ordinance." Millington, Tenn., Code 14-401(2) (2005). We also consider that a "permitted use" must be *expressly* permitted by the 1986 Ordinance. Millington, Tenn., Code 14-401(1) (2005). Although 14-603(1) permits R-2 Residential District lots to be used for single-family dwellings, it permits this use on lots that meet the minimum lot area, minimum lot width, minimum depth, etc. and in structures that meet a maximum percentage of lot coverage, number of buildings, height requirements, etc. Millington, Tenn., Code 14-603 (2005). We believe that it was reasonable, therefore, for the Board of Zoning Appeals to interpret these regulations together to permit a structure to be used as a single-family dwelling only if the lot that structure rests upon conforms to the 1986 Ordinance. There is no dispute that both Lot 2 and 5047 are nonconforming, and, therefore, we find that using 5047 for human occupation was not a use permitted by the 1986 Ordinance.

### B. Lawful Nonconforming Use

Because we find that the 1986 Ordinance does not permit using 5045 and 5047 for human occupation, our next inquiry is whether the 1986 Ordinance "grandfathers" in the use of 5045 and 5047. A party seeking to establish that it may lawfully use its property as a nonconforming use has the burden of proof. *Manhattan Inc. v. Shelby County*, No. W2006-02017-COA-R3-CV, 2008 WL 639791, at *6 (Tenn. Ct. App. Mar. 11, 2008) (*no perm. app. filed*). In addition, grandfather clauses are construed strictly against the party seeking to use them. *Exxon Corp. v. Metro. Gov't. of Nashville and Davidson County*, 72 S.W.3d 638, 642 (Tenn. 2002).

In this case, the 1986 Ordinance permits an owner to continue using a building in a manner which does not comply with the 1986 Ordinance only if that use lawfully existed when the City of Millington adopted the 1986 Ordinance. Millington, Tenn., Code 14-501(75); 14-401(2) (2005). The ordinance in effect before the 1986 Ordinance was Millington's 1961 Ordinance. Like the 1986 Ordinance, the 1961 Ordinance lawfully allowed permitted uses and nonconforming uses to continue. Unlike the 1986 Ordinance, however, the 1961 Ordinance contained an amortization clause which stated that

> [a]ll non-conforming [sic] uses shall be discontinued no later than March 1, 1979, provided, however, that uses which were conforming uses prior to the adoption of this ordinance and uses which become non-conforming [sic] because of adoption or subsequent amendment of this ordinance may be continued as non-conforming [sic] uses for no longer than twenty (20) years from the adoption date of this ordinance.

Millington, Tenn., Ordinance 1961-1, § 4.1 (1973). Because the uses that the 1961 Ordinance made nonconforming became illegal and should have ceased in 1981, only those uses actually permitted by the 1961 Ordinance lawfully existed when Millington enacted the 1986 Ordinance. In order for Mr. Jacks' use of 5045 and 5047 for human occupation to be lawfully nonconforming under the 1986 Ordinance, it must have been permitted by the 1961 Ordinance and disallowed by the 1986 Ordinance.

Mr. Jacks argues that the 1961 Ordinance amortized only nonconforming uses and not nonconforming lots or structures. Because he contends that the nonconforming status of a lot or structure does not affect whether a use may be conforming and his property is merely a nonconforming lot and structure, not a nonconforming use, he argues that the amortization clause does not apply in this situation. We emphasize once again that the question before the Board of Zoning Appeals was whether 5045 and 5047 may be *used* for human occupation, and Section 4.1, therefore, bars those uses that were nonconforming under the 1961 Ordinance from being lawful after 1981. Millington, Tenn., Ordinance 1961-1, § 4.1 (1973).

Nevertheless, Mr. Jacks does not argue on appeal that he may continue to use 5045 and 5047 as residences even though that use was nonconforming with the 1961 Ordinance;[6] Mr. Jacks claims that the human occupation of 5045 and 5047 was permitted by the 1961 Ordinance, and it was, thus, lawful in 1986 and grandfathered in as a nonconforming use with the 1986 Ordinance. The 1961 Ordinance defines a nonconforming use as "[a]ny use of property existing at the time of exactment [sic] or subsequent amendment of this ordinance that is not an authorized use in the district in which such property is located or that does not conform to the requirements of the district in which it is located." Millington, Tenn., Ordinance 1961-1, § 4 (1973). The 1961 Ordinance, like the 1986 Ordinance, therefore, requires that the regulations specifically authorize a use in order for it to be deemed a permitted use.

Mr. Jacks' first argument is that the 1961 Ordinance permitted using 5047 for human occupation because it is a single-family dwelling existing as the principal building on the lot. Using language similar to the 1986 Ordinance, the 1961 Ordinance provides that "[n]o dwelling shall be erected on a lot which does not abut a public street for at least 40 feet." Millington, Tenn., Ordinance 1961-1, § 3.6 (1973). The 1961 Ordinance also places limitations, similar to those in the 1986 Ordinance, on which lots and structures may be used as single family dwellings. Like the 1986 Ordinance, we interpret this to authorize the use of a structure as a single family dwelling only on conforming lots and within conforming structures, and find, therefore, that Lot 2's status as a landlocked lot prohibited it from being lawfully used as a single family dwelling under the 1961 Ordinance.

Mr. Jacks next argues that the 1961 Ordinance expressly permitted multiple principal uses on the same lot. In support of this contention, he notes that Section 5.4 of the 1961 Ordinance outlines the regulations applicable to R-2 Residential Districts. Section 5.4.2 explains that the minimum lot area for dwellings is "6,500 sq. ft. for the first dwelling unit plus 4,000 sq. ft. for each additional dwelling unit." Millington, Tenn., Ordinance 1961-1, § 5.4.2 (1973). This provision, he argues, demonstrates that the 1961 Ordinance placed no limit on the number of dwelling units that may reside on one lot. Section 5.4.8, however, states that the maximum number of buildings per lot is one private dwelling structure. Millington, Tenn., Ordinance 1961-1, § 5.4.8 (1973). The 1961 Ordinance's general provisions further elucidate that "[i]n no case shall there be more than one main residential building and its accessory buildings on one lot, provided, however, that this regulation shall not apply to residential buildings used for religious or education purposes." Millington, Tenn., Ordinance 1961-1, § 3.5 (1973).

Because it is our duty to construe ordinances so that no part will be inoperative, superfluous, void or insignificant and to give effect to every clause and sentence, we consider whether the

---

[6]There seems to be some confusion as to this matter. On appeal, the Board of Zoning Appeals claims that even if Mr. Jacks had successfully argued that 5045 and 5047 were accessory buildings that could be used for human occupation pursuant to an express provision of the 1961 Ordinance that use was subject to the 20 year amortization clause and, therefore, became unlawful in 1981. This is not the case; the amortization clause only applies to nonconforming uses. If Mr. Jacks can demonstrate that use of 5045 and 5047 was a *permitted use* according to the 1961 Ordinance then it was not subject to the 20 year limitation on *nonconforming* uses.

variance between these three provisions can be reconciled. *See Faust v. Metro. Gov't. of Nashville*, 206 S.W.3d 475, 489 (Tenn. Ct. App. 2006.) We believe that the ordinances are consistent. The general prohibition against more than one residence per lot in Section 3.5 excepts residential buildings used for religious or educational purposes. Millington, Tenn., Ordinance 1961-1, § 3.5 (1973). The additional 4,000 sq. ft. needed for "each additional dwelling unit" refers to the multiple residences that are allowed on one lot if the residences are used for religious or educational purposes. Millington, Tenn., Ordinance 1961-1, § 5.4.2 (1973). Because Mr. Jacks does not contend that the 5045 and 5049 were anything but private dwellings, the 1961 Ordinance prohibited more than one residence per lot on Lot 1. We find, therefore, that neither 5045 nor 5047 were permitted to be used for human occupation under the 1961 Ordinance; their use as a residence was, therefore, unlawful as of 1981 and that use may not be grandfathered in under the 1986 Ordinance. Accordingly, the Board of Zoning Appeals and the trial court properly found that the current zoning ordinance did not permit 5045 and 5047 to be used for human occupation.

### *Excluded Evidence*

Mr. Jacks also argues that the trial court erred because it refused to admit into evidence what he describes as pictures of a sixteen unit apartment building located near his property. When Mr. Jacks submitted the pictures the Board of Zoning Appeals objected that they were irrelevant. On appeal, Mr. Jacks argues that they were relevant to show that Millington vindictively enforced the zoning ordinances against him in retaliation for filing a lawsuit against the City. The pictures at issue, however, were not made part of the record.

The erroneous exclusion of evidence does not require reversal on appeal unless this Court can determine that admission of the evidence would have affected the outcome of the trial. *Dossett v. City of Kingsport*, 258 S.W.3d 139, 145 (Tenn. Ct. App. 2007). This Court cannot, however, determine the effect that the evidence might have had without knowing precisely what the evidence would have been. *Id*. Generally, the proponent of the evidence must make an offer of proof to enable the reviewing court to determine whether there was reversible error. *Id.* Without this tender of proof, this Court cannot consider the exclusion of evidence. *Id.* We hold, therefore, that the trial court's failure to exclude evidence of the sixteen unit apartment building is not reversible error.

Mr. Jacks also claims that the trial court erred by excluding his testimony that when he bought the property there was a sign posted at the end of the driveway that stated "Parking for Tenants Only." The Board of Zoning Appeals objected on the basis that evidence of the sign had not been produced at the hearing before the Board of Zoning Appeals, and the trial court sustained the objection. On appeal, Mr. Jacks contends that this evidence shows that Millington knew that 5045 and 5047 were used as residences but that the city only objected to this use after Mr. Jacks successfully sued the city. Although a trial court reviewing an administrative decision pursuant to a common law writ of certiorari is generally limited to the evidence in the administrative record, the parties may introduce additional evidence before the court that a board or commission exceeded its jurisdiction or acted fraudulently, illegally, or arbitrarily. *Brown v. Tenn. Real Estate Comm'n.*, 494 S.W.2d 506, 510–11 (Tenn. Ct. App. 1972).

From the record we perceive that Mr. Jacks introduced this evidence in support of his selective enforcement claim that Millington sought to enforce its zoning ordinance solely against him because he had successfully sued the city. To establish a selective enforcement claim, Mr. Jacks must prove two elements: first, the government singled him out for adverse regulatory or enforcement action while others engaging in similar activity have not been subject to the same type of action and, second, that the decision to prosecute them rests on an impermissible consideration or purpose. *421 Corp. v. Metro. Gov't. of Nashville and Davidson County*, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000). Mr. Jacks must prove the first element by demonstrating (1) that other non-prosecuted offenders have engaged or are engaging in essentially the same conduct, (2) that the non-prosecuted offenders violated the same regulation, statute, or ordinance that the claimant is accused of violating, and (3) that the magnitude of the non-prosecuted offender's violation was not materially different from that of the plaintiffs. *Id.* Mr. Jacks can prove the second element by demonstrating either that the government singled out a protected class of citizens for enforcement of the law or that the government prosecution was intended to deter or punish the exercise of a protected right. *Id.* at 481. Assuming that the trial court should have admitted Mr. Jacks' testimony about the sign, this evidence combined with the evidence admitted at trial is insufficient to prove all of the requisite elements of selective enforcement. We conclude, therefore, that even if the trial court had erred in excluding this testimony, it would not have affected the outcome of the trial and is, therefore, not reversible error.

### *Laches and Equitable Estoppel*

After filing notice of appeal, Mr. Jacks moved to include in the record proposed findings of fact and conclusions of law that the parties submitted to the trial court after the hearing. It is in these proposed findings of fact that we find Plaintiff raised the issues of laches and equitable estoppel for the first time. It is well known, however, that "this Court can only consider such matters as were brought to the attention of the trial court and acted upon or [pretermitted] by the trial court." *Stewart Title Guar. Co. v. Fed. Deposit Ins. Corp.*, 936 S.W.2d 266, 271 (quoting *Irvin v. Binkley*, 577 S.W.2d 677, 679 (Tenn. Ct. App. 1978)); *see K-Testing Lab, Inc. v. Estate of Kennon*, No. 02A01-9703-CH-00064, 1998 WL 373414 (Tenn. Ct. App. 1998). Because Mr. Jacks never properly raised these issues before the trial court, he cannot now assert them on appeal.

### *Moot*

The Board of Zoning Appeals raised the additional issue that Mr. Jacks' claim was moot. Relying upon *County of Shelby v. McWherter* the Board of Zoning Appeals argues that Mr. Jacks' entire claim is rendered moot by Section 14-401(2)(c)(iii) of the 1986 Ordinance which provides that

> [a]ny nonconforming building or nonconforming use, which is damaged by fire, flood, wind, or other act of God or man, may be reconstructed and used as before if it is done within twelve (12) months of such damage, unless damaged to the extent of more than sixty (60) percent of its fair sales value immediately prior to damage, in which case any repair or reconstruction shall be in conformity with provisions of the zoning ordinance.

Millington, Tenn., 14-401(2)(c)(iii) (2005). The Board of Zoning Appeals argues that despite Mr. Jacks' argument that the use of any nonconforming property has been grandfathered into use for human occupation, 5047 sustained more than sixty percent damage and the Board, therefore, could not permit Mr. Jacks to reconstruct the building.

In *McWherter*, this Court stated that " [a] case will generally be considered moot when the prevailing party will be provided no meaningful relief from a judgment in its favor." *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). In *McWherter* we went on to articulate, that " [t]o avoid being dismissed as moot, cases or issues must be justiciable not only when a case is first filed but must remain justiciable throughout the entire course of the litigation." *Id.* The doctrine of mootness refers to a case which has *lost* its character as a present and live controversy. *Id.* We do not believe, however, that there is any question of mootness in the present case. First, Appellant's argument begs the question whether 5047 is nonconforming and, thus, whether 14-401(2)(c)(iii) even applies. Second, this is not a situation where the issue became non-justiciable during the course of litigation; 5047 sustained the alleged sixty-percent water damage before Jacks even filed his claim against the City. Therefore, Appellee's failure to raise 14-401(2)(c)(iii) before the Board as another defense to the Zoning Board's decision to deny Mr. Jacks a plumbing permit does not create a jurisdictional question for this Court to address. Because there is no indication that Appellee raised this defense before the Board of Zoning Appeals, we consider the issue waived. *See, e.g., City of Brentwood v. Metro. Bd. of Zoning Appeals*, No. M2005-01379-COA-R3-CV, 2007 WL 1890641, (Tenn. Ct. App. June 28, 2007) *perm. app. denied* (Tenn. Oct. 15, 2007).

### *Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court, and costs of this appeal are taxed to the Appellant, James D. Jacks.

_____
DAVID R. FARMER, JUDGE