IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2011 Session

LINDA EPPS v. CIVIL SERVICE COMMISSION OF THE
METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON
COUNTY, AND THE METROPOLITAN ACTION COMMISSION

Appeal from the Chancery Court for Davidson County
No. 09522 IV     Russell T. Perkins, Chancellor

No. M2010-01929-COA-R3-CV - Filed June 30, 2011

This appeal arises out of a dismissal of a petition for writ of certiorari in which review was
sought of the denial of a grievance filed by an employee of the Metropolitan Action
Commission's Head Start program. The grievance was initially denied by the Executive
Director of the Metropolitan Action Commission. The employee then appealed the grievance
to the Metropolitan Civil Service Commission, which assigned the appeal to an
administrative law judge; after a hearing, the administrative law judge denied the grievance.
Upon further appeal, the Civil Service Commission overturned the administrative law judge's
decision and held in favor of the employee; the Civil Service Commission transmitted its
decision to the Board of Commissioners of the Metropolitan Action Commission as a
recommended final order. The Board of Commissioners rejected the recommended decision
and voted to deny the grievance. When the employee sought to appeal the Board of
Commissioner's decision to the Civil Service Commission, that Commission responded that
it had no further authority to hear the appeal because the employee was not an employee in
classified service and because the Metropolitan Action Commission had final authority on
grievance decisions involving employees of the Head Start program. The employee then
sought review by writ of certiorari in chancery court, which found that the employee was not
a civil service employee and was, therefore, not entitled to a second appeal to the Civil
Service Commission; the court also found that the Metropolitan Action Commission had
conformed to the applicable grievance process. On appeal, the employee asserts that she was
employed in a civil service position and entitled to the grievance process set forth in the civil
service rules. Finding that the grievance procedure applicable to employees in the classified
service is not applicable to the employee and that the Action Commission properly exercised
final authority on the grievance, we affirm the action of the trial court.

1

**Tenn. Rule App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Michelle Blaylock Owens and Mark Milton Brooks, Nashville, Tennessee, for the appellant, Linda Epps.

J. Brooks Fox, Christopher Michael Lackey, and Elizabeth Anne Sanders, Nashville, Tennessee, for the appellee, Civil Service Commission of the Metropolitan Government of Nashville and Davidson County and the Metropolitan Action Commission.

**OPINION**

**Factual and Procedural Background**

Linda Epps is an employee of the Metropolitan Action Commission ("MAC") and holds a position as a Teacher Assistant with the Head Start Program at Ross Head Start Center in Nashville, Tennessee. On November 15, 2007, Ms. Epps arrived to work wearing an orthopedic boot; her supervisor refused to permit her to work on the basis that the boot prohibited her from performing essential functions of her job. Thereafter, Ms. Epps was kept off work from November 15 until December 26, during which time she suffered a loss of pay.

Ms. Epps filed a grievance protesting the refusal to permit her to perform her job; the grievance was denied. Ms. Epps appealed the denial to the Metropolitan Civil Service Commission ("CSC"), and the case was assigned to an administrative law judge ("ALJ"). Following a hearing, the ALJ issued an Initial Order denying the grievance, a decision Ms. Epps appealed to the CSC. On November 12, the CSC voted to overturn the Initial Order and award compensation to Ms. Epps for all work time lost; the CSC issued a "Final Order Recommended" reflecting its action. The order also stated that "[t]his Amended Order shall be adopted by this Commission, and in accordance with the agency agreement, shall be recommended to the Metro Action Commission as FINAL."

On January 21, 2009, the MAC Board of Commissioner's Personnel Committee held a hearing in which it voted not to accept the CSC's recommended order and instead to adopt the order of the ALJ. The following day, the Personnel Committee brought its recommendation before the Board of Commissioners, which unanimously voted to accept the recommendation of the Personnel Committee and denied the grievance.

On February 2, 2009, Ms. Epps' counsel sent a letter to Dorothy Shell-Berry, Director of Human Resources of the Metropolitan Government, appealing the decision by the MAC. The letter cited Civil Service Rule § 6.9 as authority for the appeal and requested that Ms. Epps' case "be referred to the CSC for enforcement pursuant to Civil Service Rule § 6.9(E)." Ms. Shell-Berry responded by letter stating that, pursuant to a Memorandum of Understanding between MAC and CSC, disciplinary matters and grievances would be heard by CSC, that CSC would forward "Recommended Final Orders" to the Board of Commissioners for final review, and that it was the responsibility of MAC to enter a final order in both disciplinary and grievance appeals.

On March 19, 2009, Ms. Epps filed a Petition for Writ of Certiorari and Declaratory Judgment in Davidson County Chancery Court. The petition asserted that MAC's and CSC's ("respondents") refusal to enforce CSC's Final Order Recommended was illegal under the Metropolitan Charter and Civil Service Rules; that CSC's refusal to hear Ms. Epps' appeal of MAC's January 21, 2009 decision was illegal; that Ms. Epps had been deprived of due process; and that respondents' actions were "without authority and [were] *ultra vires*." The petition sought, *inter alia*, enforcement of CSC's Final Order Recommended as the final order of Metro Government or, in the alternative, that CSC process petitioner's appeal of MAC's January 21 decision.[1]

On August 4, 2010, the trial court issued a memorandum opinion and order in which it dismissed the petition for writ of certiorari. The court found that, under Tenn. Code Ann. § 8-30-328(a)(7), CSC was the "final step" in the grievance process for civil service employees, while MAC, as the appointing authority, was the "final step" for its employees, who were not in the civil service. The court found petitioner to be a non-civil service employee, and held that the grievance process followed by respondents was proper. The court further held that the Memorandum of Understanding between MAC and CSC did not violate the Charter of the Metropolitan Government of Nashville and Davidson County ("Metro Charter") or the Civil Service Rules of the Metropolitan Government of Nashville and Davidson County ("Civil Service Rules" or "C.S.R."); instead, the court concluded that the grievance procedure was authorized by federal regulation and the Metropolitan Code of

---

[1] MAC and CSC filed a motion to dismiss on grounds that the case was subject to dismissal under Tenn. R. Civ. P. 12.02(5) because "no writ [has been] issued (or served) in this case commanding a particular administrative agency to produce what administrative record (or transcript)." The motion also asserted that the petition failed to state a claim because it combined a petition for writ of certiorari—an appellate action—with a claim for declaratory judgment—an original cause of action; respondents asserted that this procedure was prohibited under Tennessee law. On May 29, 2009, petitioner filed an amended petition for writ of certiorari in which declaratory relief was not sought, and the court entered an agreed order on June 12 in which the motion to dismiss was withdrawn.

Law, and was consistent with Tenn. Code Ann. § 8-30-328. The court also held that petitioner was not deprived of due process and that respondents' actions were not *ultra vires* or without authority.

Petitioner appeals, asserting that her position as a Teacher Assistant with MAC is a civil service position under Metro Charter § 12.08, and that she is entitled to the grievance procedure in Section 6.9(C) of the Civil Service Rules. She seeks an order from this Court enforcing the November 12, 2008 decision of the CSC or, in the alternative, instructing CSC to process her appeal of MAC's January 21, 2009 ruling.

### Standard of Review

Judicial review of an action by an administrative body, such as the Metropolitan Action Commission, is by way of the common law writ of certiorari. Tenn. Code Ann. § 27-8-101; *see also Demonbreun v. Metropolitan Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005); *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). Under the common law writ, the scope of review is generally limited to a determination of whether the administrative body acted within its jurisdiction, or acted arbitrarily, capriciously, or illegally. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Our review of the evidence on appeal can be no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia,* 606 S.W.2d 274, 277 (Tenn. 1980); *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 167 (Tenn. Ct. App. 2009). Application of a statute or ordinance to the facts is a question of law that is properly addressed to the courts. *Sanifill of Tenn., Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995). As to issues of law, our review is *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

### Discussion

As a preliminary matter, a brief discussion of the Metropolitan Action Commission, the Head Start Program and the Metropolitan Civil Service Commission and of the grievance procedures applicable to this appeal is appropriate.

The Metropolitan Action Commission ("MAC") was established in 1964 by ordinance codified at Metro Code §§ 2.108.010–.050.[2] It consists of an 18 member governing board

---

[2] Formerly Metro Code §§ 2-1-74–78; enacted by Ordinance Number 64-312, § 1.

whose members are appointed by the Metropolitan Mayor and confirmed by the Metropolitan Council. MAC's purpose is

> to coordinate the existing facilities of the metropolitan government, private, state and federal educational, health and welfare facilities, to the end that all such facilities shall be marshalled in an effort to obtain full employment and job opportunity for the residents of this community through education, reeducation, upgrading of health and physical environment, and such other means as may be proper.

Metro Code § 2.108.050(A). MAC has the authority to "employ personnel and enter into contracts for services as it may require." Metro Code § 2.108.050(B)(1). MAC may also "[e]nter into agreements and receive such grants or assistance, or both, as may be available from the federal or state governments for the purposes for which the commission is established, and also to receive gifts for such purposes." Metro Code § 2.108.050(B)(2).

The Head Start Program is a free, early childhood education program funded by and subject to the regulation of the federal government; locally, it is administered by MAC. The Head Start Program is overseen by the Head Start Policy Council. *See* 45 C.F.R. § 1304.50(a)(1)(i). Among other duties, the Policy Council develops, reviews, and approves or disapproves of personnel policies and decisions to hire or terminate employees that work primarily for the Early Head Start or Head Start program. 45 C.F.R. § 1304.050(d)(1)(ix), (xi). MAC has adopted a Personnel Policies and Procedures Manual applicable to all MAC employees. Of particular relevance to this appeal are the portions of the manual providing (1) that selection and appointment of Head Start staff will be made upon recommendation by the department director and subject to approval by the Policy Council and (2) a grievance procedure for MAC employees. MAC Manual §§ 3.4, 6.7.

The Civil Service Commission ("CSC") is an agency of the Metropolitan Government of Nashville and Davidson County ("Metro") charged with, *inter alia*, the employment of individuals into civil service—also referred to as the classified service. Metro Charter §§ 12.01, 12.08. CSC is responsible for adopting and administering the Civil Service Rules, Metro Charter § 12.06. The positions in the Metro government which are in the classified service are those set forth in Metro's general pay plan which is approved by CSC and the Metropolitan Council. Metro Charter § 12.10.

The MAC personnel manual is applicable to all MAC employees. Manual § 1.3. The grievance procedure is set forth at § 6.7. Under that procedure, the grievance is first presented to the employee's supervisor and, if the employee is not satisfied with the response,

referred to the Executive Director. *Id.* If the employee is not satisfied with the Executive Director's response, the employee may appeal to the MAC Board of Commissioners. *Id.*

Section 6.9 of the Civil Service Rules sets forth the grievance process applicable to civil service employees. An employee initiates a grievance by filing a written complaint to the departmental human resources coordinator, who renders a decision on the grievance. C.S.R. § 6.9(B). The employee may appeal that decision to the "appointing authority,"[3] who enters a final decision. *Id.* If the employee is not satisfied with the final decision, he or she may appeal to the CSC, and an administrative law judge will be assigned to hear the appeal; the ALJ's decision will then be reviewed by the CSC. C.S.R. § 6.9(C). After the CSC renders a decision, enforcement of the decision is expected to occur as soon as possible. C.S.R. § 6.9(E).

In 2004, MAC and CSC entered into a Memorandum of Understanding ("MOU") whereby an employee whose grievance had been decided by the Executive Director of MAC could, upon request, appeal to the CSC. In relevant part, the grievance procedure provides:

1. When requested by the employee, a grievance or a suspension, demotion or termination upheld by the executive director of the Metropolitan Action Commission will be forwarded to the Civil Service Commission. The Civil Service Commission shall handle the appeal in the same manner and pursuant to the same procedural rules that are used for appeals from civil service employees.

2. The Civil Service Commission, after first obtaining an initial Order from a Hearing Officer or Administrative Law Judge, shall enter a Recommended Final Order that determines the merits of the grievance or the guilt or innocence of the employee to the disciplinary charges. In disciplinary appeals, the Recommended Final Order shall also contain a determination of any recommended disciplinary action.

3. The Recommended Final Order shall then be forwarded to the Board of Commissioners, and the Head Start Policy Council specific to Head Start positions, for final review. It will be the responsibility of the Metropolitan Action Commission to enter the Final Order in both grievance and disciplinary appeals.

---

[3] The appointing authority is the "Metropolitan official who is given authority to direct all functions of a department: appointing authority is usually vested in a Department Head unless otherwise delegated." C.S.R. Ch. 10.

*A. Ms. Epps' status as employee of MAC*

Ms. Epps contends that she is a Metro employee in the classified service pursuant to § 12.08 of the Metro Charter and is, therefore, entitled to the protections of the grievance procedure under § 6.9 of the Civil Service Rules. Metro and MAC respond that, because the Teacher Assistant position Ms. Epps holds was not created in accordance with § 12.10 of the Charter but, rather, was created and filled pursuant to federal regulations applicable to the Head Start program, her grievance rights are those set forth in the Memorandum of Understanding between MAC and CSC.

Metro Charter § 12.10 provides that positions in the Metro government which are in the classified service are those which are created in accordance with the section and which are set forth in Metro's general pay plan; the employees in the classified service are covered by the grievance process at C.S.R. § 6.9.[4] The MAC Teaching Assistant position held by Ms. Epps is not one of the positions listed in the Metro pay plan, which was introduced as part of the record in this case. There is nothing in the record to show that Ms. Epps' position was created in the manner set forth in Metro Charter § 12.10 or that she was hired through the civil service selection process.[5] The record does not support Ms. Epps' contention.

*B. The applicable grievance process*

Because Ms. Epps is not a civil service employee, the grievance procedure set forth at C.S.R. § 6.9 is not available to her. The role of the CSC, as agreed in the MOU, is to make a Recommended Final Decision which is forwarded to the MAC Board of Commissioners; the MOU is clear that MAC has authority to enter a final judgment on grievance appeals, and MAC is not bound to enter the decision as recommended by the CSC.

Ms. Epps argues that the provision of the MOU that reserves final decision making authority on employee grievances to MAC is illegal because the provision violates § 6.9 of

---

[4] "Any position, job or employment hereafter created in the manner above provided, shall be in the classified service as herein defined and subject to all the rules of the civil service commission, except as the ordinance creating the same or this Charter may otherwise provide."

Metropolitan Charter § 12.10.

[5] Further support for the trial court's finding that Ms. Epps was not in the classified service of Metro is found in a Memorandum of Understanding between MAC and the Service Employees International Union Local 205. The SEIU is the authorized representative of the employees of MAC who are classified as non-exempt under the Fair Labor Standards Act and designated as non-exempt by MAC. The memorandum includes the Teaching Assistant position among the positions represented by SEIU.

the Civil Service Rules which, under § 12.07 of the Charter, "have the full force and effect of law." Ms. Epps' argument is premised on the contention that she is a classified employee of Metro, a contention we have rejected. MAC's ability to enter into the MOU with the CSC, whereby CSC appoints an officer to take evidence on an employee grievance and the CSC makes a recommended decision to the MAC Board of Commissioners, is within the scope of authority granted to MAC under Metro Code § 2.108.050(B)(1) and the agreement is not illegal.

The record does not support a finding that the actions taken by respondents were arbitrary, capricious or illegal or that Ms. Epps was deprived of her rights to due process.[6]

## Conclusion

For the foregoing reasons, the judgment of the Chancery Court of Davidson County is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE

---

[6] Petitioner asserts, and respondents agree, that the trial court erred in relying on Tenn. Code Ann. § 8-30-328, which sets forth the grievance procedure applicable to state employees. Although the statute is inapplicable to this case, the trial court was nevertheless correct to dismiss the case. To the extent the court relied on Tenn. Code Ann. § 8-30-328, such reliance amounted to harmless error.