IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2014 Session

THE METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON
COUNTY, TN, ET AL. V. THE BOARD OF ZONING APPEALS OF
NASHVILLE & DAVIDSON COUNTY, TN, ET AL.

Appeal from the Chancery Court for Davidson County
No. 120103I     Claudia Bonnyman, Chancellor

No. M2013-00970-COA-R3-CV - Filed October 13, 2014

Advertising company applied to the Metropolitan Government Department of Codes and Building Safety for a permit to convert its standard billboard to a digital billboard. The zoning administrator denied the request; the company appealed to the Metropolitan Board of Zoning Appeals, which reversed the administrator's decision and granted the permit. Days later, the permit was revoked on the ground that the proposed digital billboard violated a provision in the zoning code. The company again appealed to the Board of Zoning Appeals, which held that the permit had been revoked in error and reinstated the permit. The Metropolitan Government then filed a petition for a writ of certiorari seeking review of the Board's decision; the trial court reversed the decision granting the permit. The advertising company appeals; finding no error, we affirm the judgment of the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and LAURENCE M. MCMILLAN, Jr., SP. J., joined.

Nancy King Crawford and George A. Dean, Nashville, Tennessee, for the appellant, Lamar Tennessee, LLC d/b/a Lamar Advertising.

Saul Solomon, Lora Barkenbus Fox, and Emily Herring Lamb, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

James R. Tomkins, Nashville, Tennessee; and Roger A. Horner, Brentwood, Tennessee, for the appellee, City of Brentwood, Tennessee.

**OPINION**

**I. HISTORY**

In 2000 Lamar Tennessee, LLC ("Lamar"), a company which advertises products through the use of billboards, built a standard billboard on property located in a "CS"–Commercial Service– district in Metropolitan Nashville ("Metro"). In 2006 the zoning was changed from "CS" to "MUL"–Mixed Use Limited, a district in which billboards are not permitted; in accordance with Tenn. Code Ann. § 13-7-208, Lamar continued to use the billboard. In 2008 the Metropolitan Code was amended to add lighting restrictions, one of which prohibited LED message boards and digital display signs on property in MUL districts.

On May 6, 2011, Lamar applied to Metro's Department of Codes and Building Safety for a permit to replace its existing billboard with a digital one. The application was denied by the zoning administrator on the ground that the change from standard to digital was a "change from one non-conforming use to another"; Lamar appealed the decision to the Metro Board of Zoning Appeals ("BZA"). The hearing took place on August 18; in the course of the meeting the BZA was advised that the case "has been withdrawn by staff, that billboard is legally nonconforming and is permitted, as a matter of right, to change their billboard from static to digital." An order memorializing the action was entered on August 19.

On August 23 Lamar was advised by letter from Joel Hargis, the Zoning Examination Chief of the Department, that the permit had been revoked because "it was issued in violation of § 17.32.050 H(2) of the Metro Zoning Ordinance."[1] Lamar appealed the revocation to the BZA; following a hearing on October 20, the BZA entered an order on November 23, 2011 holding that the permit had been revoked in error.

On January 23, 2012, Metro filed a petition for writ of certiorari in Chancery Court, alleging that the BZA's decision was contrary to law and would violate the Metro zoning code; the City of Brentwood was permitted to intervene as a petitioner and filed a petition seeking to invalidate the BZA's action. Following a hearing, the court held that Lamar could continue to use the billboard as it had prior to the 2006 zoning change from CS to MUL but that it could not light the billboard digitally; accordingly, the court reversed the BZA's

---

[1] The letter advised in part:

> The non-conforming status of the existing billboard would permit the replacement of the billboard with either a static billboard or a billboard of tri-panel design, such that exists today. The above section [Code § 17.32.050 H 2], however, would not allow that non-conforming billboard to be converted to a digital billboard.

2

action. Lamar filed a motion to alter or amend the judgment, which was denied by order entered March 19, 2013. Lamar filed a timely notice of appeal.

## II. STANDARD OF REVIEW

The vehicle for seeking review of local boards of zoning appeals decisions is by common law writ of certiorari. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals of Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997). Under this standard of review, the trial court reviews the lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Id*; *Hoover v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 833 S.W.2d 613, 616 (Tenn. Ct. App. 1994). Our review on appeal can be no broader or more comprehensive than the trial court's review. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Jacks v. City of Millington Bd. of Zoning Appeals*, 298 S.W.3d 163, 167 (Tenn. Ct. App. 2009).

Application of a statute or ordinance to the facts is a question of law that is properly addressed to the courts. *Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995). As to issues of law, our review is *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## III. ANALYSIS

### A. STANDING

Lamar argues that Metro lacks standing to bring this certiorari proceeding because the BZA is an arm of Metro with no independent legal existence and, therefore, Metro cannot be aggrieved by the BZA's actions.

The issue of Metro's standing to bring a certiorari proceeding to review a decision of the BZA was recently before this court in *Metropolitan Government of Nashville and Davidson Cty, et al. v. Metropolitan Board of Zoning Appeals, et al*, No. M2013-01283-COA-R3-CV, 2014 WL4364852 (Tenn. Ct. App. September 3, 2014). In that case, we were called upon to review the doctrine of standing, pertinent case law and statutes, the Metropolitan Charter, the Metropolitan Code, and to examine the roles of Metro and the BZA in zoning matters; we concluded that Metro has broad powers to pass zoning ordinances as well as the responsibility to regulate and enforce zoning, while the BZA's role is more limited. *Id.* at *4. By virtue of Metro's responsibilities under state law and the Metropolitan Code to enforce specific provisions of the zoning code, as well as the special interest in the

BZA decision created by the duty to protect the public health and safety, we held that Metro could be "aggrieved" within the meaning of Tenn. Code Ann. § 27-9-101 and thereby acquire standing. *Id*. at *5. We also rejected the argument that, because the BZA "was created by Metro and is 'an arm of the local government with no independent legal existence' and . . . has no independent source of funding," Metro could not pursue the action. *Id*. at *7. In this regard, we noted that "in seeking such review, Metro seeks to perform its statutory obligations, which are larger than the limited role assigned to the BZA; as well, Metro acts in its corporate capacity in lieu of other citizens." *Id*. We reiterate those holdings here.

Lamar also contends that to establish standing Metro was required to introduce proof that "the zoning board decision would have a 'substantial, direct and adverse effect on the Metropolitan Government'" and that "the lack of any proof thoroughly explaining and substantiating the 'substantial adverse effect' or otherwise demonstrating the accuracy of the government's position requires dismissal."

In making this argument, however, Lamar fails to appreciate the practical application and effect of the unique role Metro has in zoning matters:

> Pursuant to § 2.01 of the Metropolitan Charter, Metro is vested with the power, *inter alia,* to regulate zoning, to create various boards and commissions, and to pass ordinances "necessary for the health, convenience, safety and general welfare" of the citizens. The zoning code for Metro is codified at Title 17 of the Metropolitan Code and establishes "those rules and procedures deemed necessary and appropriate to administer and enforce the provisions of this title, so as to protect the public health, safety, morals, convenience, order, prosperity and general welfare of the . . . inhabitants of Metropolitan Nashville." Metropolitan Code § 17.04.010 B.

*Metro. Gov't of Nashville-Davidson Cnty.*, 2014 WL 4364852 at *4. In light of these responsibilities, proof to the degree of specificity and in the manner urged by Lamar is not necessary. We agree with the trial court that Metro's burden to show "aggrievement" was satisfied by the fact that the effect of issuing the permit allowing the digital billboard was to prevent Metro from enforcing the illumination restrictions applicable to the MUL zoning

4

district as specified in Code § 17.32.050 H 2.[2]    As recognized by the trial court, just as Metro's role is unique, so is its injury.[3]

Inasmuch as we have determined that Metro has standing to bring this proceeding, Lamar's contention that the court has no subject matter jurisdiction over Brentwood's petition for certiorari because the petition was filed more than sixty days after the BZA's decision, is pretermitted.

---

[2]  The trial court held:

> Metro meets [the requirements of Tenn. Code Ann. § 27-9-101] because the BZA's decision interfered with Metro's ability to fulfill its obligations under the local zoning code, in that the illumination restrictions of the Metro Code could not be enforced.  Metro has a strong interest in assuring that its boards and commissions do not, through legal error, make decisions that essentially void provisions of its Code, or otherwise render such ordinances unenforceable.  Metro has the authority to seek judicial review of such board decisions, in order to maintain the operation of the local zoning code.

[3]  We held in *City of Brentwood v. Metro. Bd. of Zoning Appeals* that, when applied to local governments in land use cases, the "aggrievement" that serves to supply the "distinct and palpable injury" required for standing "encompasses interference with the government's ability to fulfill its statutory obligations or substantial, direct and adverse effects on the local government in its corporate capacity." *City of Brentwood*, 149 S.W.3d 49, 58 (Tenn. Ct. App. 2004) (citations omitted).

**B. APPLICATION OF TENN. CODE ANN. § 13-7-208(B)(1)**

Lamar contends that Metropolitan Code § 17.32.050 H 2[4] is a zoning regulation to which the Non-Conforming Property Act, Tenn. Code Ann. § 13-7-208(b)(1)[5], applies and permits the replacement of the mechanical sign with a digital one. Metro argues that the ordinance is a non-zoning safety restriction and that Lamar's proposed use is not protected by the statute. Consequently, we must first determine whether Metro Code § 17.32.050 H 2 is a zoning regulation, thereby invoking the protections of the Tenn. Code Ann. § 13-7-208(b)(1).

In *Cherokee Country Club v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004), our Supreme Court considered whether an ordinance which prohibited the issuance of all demolition permits for property which was under consideration for designation as a historical overlay district was a zoning ordinance or a building regulation enacted pursuant to the City's

---

[4] Metro Code § 17.32.050 H 2 provides:

It is unlawful to erect, cause to be erected, maintain or cause to be maintained, any sign not expressly authorized by, or exempted from, this title. Any prohibited sign(s) may be removed by the zoning administrator or his designee after notice to the property owner or occupant to remove such sign(s) within three days. The following signs are expressly prohibited:

* * *

H.

* * *

2.     LED message boards and digital display signs in the AG, AR2a, R, RS, RM, RM-A, MUN, MUN-A, MUL, MUL-A, MUG, MUG-A, MUI, MUI-A, MHP, ON, OL, OG, OR20, OR20-A, OR40, OR40-A, ORI, ORI-A, CN, CL, SCC and SCN districts, except for time/temperature/date signs, provided that this prohibition shall not apply to signs existing as of January 1, 2014, that are located on property zoned MUI-A along an arterial street within the urban zoning overlay district and have a surface area in excess of 1,200 square feet.

[5] Tenn. Code Ann. § 13-7-208(b)(1) provides that:

In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

6

general police powers. The Court noted that "[t]he precise contours of determining when an ordinance is a zoning ordinance, and thus subject to statutory zoning requirements . . . are difficult to draw or define," and that "determining whether a zoning ordinance exists requires 'a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city.'" *Id.* at 472 (citations omitted).[6] After reviewing treatises on zoning and cases from other jurisdictions, the court adopted the "substantial effects" test, stating:

> In resolving this issue of first impression, we believe that the determination of whether a regulation or an ordinance "substantially affects" the property owners' use of land is a well-reasoned and persuasive approach. This analysis avoids the difficulty of definitions found in some decisions by focusing on both the terms and the effect of an ordinance, as well as its "relation to the general plan of zoning." McQuillin § 25.53. The analysis is also more comprehensive and more precise than simply attempting to distinguish whether the terms of an ordinance regulate the use of land or how the land is used. Finally, the analysis eliminates the risk that a municipality may avoid statutory zoning requirements by attempting to label what is in reality a zoning ordinance as a building regulation.

*Id.* at 473. Utilizing the "substantial effects" test, the Court determined that the demolition ordinance was a zoning ordinance because its broad and permanent restrictions on demolition substantially affected the club's use of its property. *Id.* at 474.

In *SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467 (Tenn. 2012), the Supreme Court employed the "substantial effects" test to resolve an issue of whether an ordinance which banned the sale of fireworks in the city limits was a zoning ordinance, thereby invoking the protections of Tenn. Code Ann. § 13-7-208(b)(1) to permit a retailer whose property had been annexed into the city to continue to sell fireworks, or a regulation enacted by the City pursuant to its general police powers granted to it at Tenn. Code Ann. § 6-2-201(22).[7] The court articulated the test as follows:

---

[6] The statutory zoning requirements referenced by the court are at Tenn. Code Ann. §§ 13-7-201–211.

[7] Tenn. Code Ann. § 6-2-201(22) provides that municipalities may:

Define, prohibit, abate, suppress, prevent and regulate all acts, practices, conduct, businesses, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the municipality, and exercise general police powers.

[The "substantial effects" test] is actually a two part test that examines both the terms and the effects of the challenged ordinance. The first step requires courts to review the terms of the challenged ordinance and the municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that it can be fairly characterized as tantamount to zoning. The second step requires the courts to determine whether the challenged ordinance substantially affects the use of property that is the subject of the litigation. Both parts of the test must be satisfied before a challenged ordinance may be held tantamount to zoning.

*Id*. at 478. Applying the first part of the test the Court determined that the ordinance did not refer to the City's zoning plan and that its operation was not dependent upon the plan; the court also noted the ordinance "[did] not refer to land, zones, buildings, lot lines, or any other terms and concepts customarily associated with comprehensive zoning plans" and held that the ordinance "reflects the exercise of the city's traditional, general police power granted in Tenn. Code Ann. 6-2-201(22)." *Id*. at 479. Because the Court did not determine that the ordinance was tantamount to a zoning ordinance, it did not apply the second part of the test; the court concluded that because the ordinance was not a "zoning change" or a "zoning restriction" under the substantial effects test, the retailer did not qualify for relief under Tenn. Code Ann. § 13-7-208(b)(1)." *Id*.[8]

Applying the "substantial effects" test to the case at bar, we conclude that, while Code § 17.32.050 H 2 is closely related to the zoning plan, it is not "tantamount to zoning"; further, application of the ordinance under the circumstances presented does not substantially affect Lamar's use of the property.

Title 17 of the Metropolitan Code of Ordinances contains Metro's zoning code. Code § 17.04.010 B states the purpose of the code:

Purpose and Authority. This zoning code is enacted pursuant to Articles 2 and 20 of the Charter of the Metropolitan Government of Nashville and Davidson County and Title 13 of the Tennessee Code Annotated. This title is designed to implement the goals and objectives of Concept 2010: A General Plan for Nashville and Davidson County and its associated subarea and functional plans. Created by this title are a diverse range of zoning districts which

---

[8] We do not agree with Lamar's argument that the *SNPCO* test "applies only in circumstances where the ordinance may be 'tantamount to zoning' but is not actually zoning." As shown by the *SNPCO* court's analysis, the test is used to determine whether a particular ordinance is a zoning measure governed by Tenn. Code Ann. § 13-7-201, et seq., or a product of the city's exercise of its authority to enact health, safety and public welfare regulations pursuant to its police powers.

8

establish appropriate land uses and associated standards of development needed to implement the land use policies of the General Plan. In conjunction with this title an official zoning map assigns an appropriate zoning classification to all properties to which this title is applicable. . . . This title further establishes development standards which are designed to protect the value and integrity of neighboring properties, enhance the general character and appearance of the community, reinforce the central business district, and provide for a reasonable balance between efficient utilization of land, protection of this community's environmental resources and assuring the operational integrity of streets. . . .
(Ord. 96-555 § 1.1, 1997)

Zoning districts are established at Code § 17.08.010 and include agricultural, residential, specific plan, mixed use, office, commercial, downtown code, shopping center, and industrial districts; the nature and character of each district is described at § 17.08.020.

Chapter 17.32 of the Code is entitled "Sign Regulations"; the purpose and intent of this chapter is set forth at § 17.32.010 and, with specific reference to safety, states:

Safety. Construct and display signs in a manner that allows pedestrians and motorists to identify, interpret and respond in an efficient and discerning manner to the following:
1. Information related to public traffic control, directions and conditions;
2. Movement of all other pedestrians and vehicles that impact traffic on a given travelway; and
3. Information other than public traffic related when displayed in a manner which is clear, concise and noncompeting with public traffic information.

Metropolitan Code § 17.32.010 A.[9] Metropolitan Code § 17.32.020 A provides that the sign regulations "are intended to complement the various codes and ordinances of the metropolitan government" and that "[w]henever there is inconsistency between these sign regulations and other regulations of the metropolitan government, the more stringent shall apply."

Metropolitan Code § 17.32.030, entitled "Rationale, definition, system for regulation and overall use," provides in pertinent part:

---

[9] The other provisions of this section pertain to protection of minors (§ 17.32.010 B), graphic continuity and aesthetics (§ 17.32.010 C), protection of future public right-of-way (§ 17.32.010 D), and activities and services identification (§ 17.32.010 E).

C.  System for Regulation.  Regulation of signs is based on size, location, method of attachment, duration and design/lighting.  The following distinctions apply to the regulation of signs:

1. Regulations based on size;
2. Regulation based on location;
3. Regulation based on method of attachment:
    a.  On-premises ground sign,
    b.  On-premises building sign;
4. Regulation based on duration:
    a.  On-premises temporary sign,
    b.  On-premises permanent sign;
5. Regulation based on design/method of lighting:
    a.  Illuminated sign,
    b.  Nonilluminated sign.

Regulations apply to signs with respect to specific permissiveness and provisions in each use district or group of related districts.  Regulations are generally more restrictive in residential districts than in commercial districts.

Code § 17.32.150 provides that billboards are permitted in the CL, CS, IWD, CF, IR and IG districts "subject to the provisions of this chapter and this title"; the section contains regulations specifically applicable to billboards, none of which are at issue in this case.[10]

It is within this construct that we consider whether the prohibition on LED message boards and digital display signs at Metro Code § 17.32.050 H 2 is in reality a zoning ordinance or a non-zoning safety provision.

The fact that the regulation is included in the zoning code and that enforcement of the regulation is vested with the zoning administrator is not dispositive of the question.  Viewed in the context of the entire zoning ordinance, it is apparent that the signage regulation and related lighting provisions contained in Chapter 17.32 are of a character and purpose different than that reflected in the statement of purpose of the zoning code; they do not reflect the land use policy considerations and objectives inherent in the development of the comprehensive zoning code.  *See* Code § 17.04.010 B.  While allowing, prohibiting, or otherwise regulating particular signs in specified districts is a component of the overall zoning ordinance, Chapter 17.32 does not "depend[] entirely upon the zoning districts established by the Metropolitan Zoning Ordinance", as argued by Lamar.  Rather, Chapter

_____

[10]  Metro asserts that the regulation applicable in this case is "design/method of lighting" at Code § 17.32.030 C 5.

17.32 functions primarily to complement the uses of property as reflected in the zoning districts established at Code § 17.08.010. More importantly, the signage regulations are reflective of the city's powers and responsibilities to provide for the public safety. By their nature specific signage regulations may be appropriate in residential zones, different regulations in commercial zones, and different regulations in industrial zones; the regulations, however, do not impair the use of the property upon which the sign is located. The regulations operate as a means to accomplish specific objectives in the zoning code, and are not "tantamount to zoning."

We are also of the opinion that § 17.32.050 H 2 does not substantially affect Lamar's use of the billboard. In its brief Lamar argues that "the off-premises sign industry is tremendously competitive and dependent upon technological innovation" and that incorporation of technological improvements "is critically important [to] maintaining and reasonably increasing viewership of the signs." The question before us, however, is whether the ordinance "substantially affects the use of the property," not whether the ordinance prevents Lamar from maximizing viewership of the signs. Lamar has maintained a standard billboard on the property since 2000, with the use grandfathered in when the zoning was changed from CS to MUL in 2006. Code § 17.32.050 H 2 was passed in 2008 and Lamar did not apply to replace the existing billboard to a digital one until 2011.[11] Lamar is still able to use the billboard in the MUL zone as it was originally constructed and to utilize digital billboards in other zones where allowed.

---

[11] The Metropolitan council acknowledged the advances in technology in the preamble to the ordinance:

> WHEREAS, the sign provisions of the Zoning Code, Chapter 17.32 of the Metropolitan Code, have remained basically unchanged since adoption in 1992; and
>
> WHEREAS, technology in the sign industry has evolved in the last 15 years as to electronics; and
>
> WHEREAS, the Tennessee General Assembly adopted legislation permitting changeable message signs with digital displays on April 19, 2007; and
>
> WHEREAS, the Tennessee Department of Transportation, with guidance from the Federal Highway Administration, has adopted regulations for the use of digital displays on billboards in Tennessee; and
>
> WHEREAS, it is appropriate that the Metropolitan Code provision pertaining to digital billboards be updated to reflect the technological advancements in the sign industry.

Because Code § 17.32.050 H 2 is not a zoning ordinance, the statutes governing zoning at Tenn. Code Ann. § 13-7-201, et seq., do not apply and the protections of the Non-Conforming Property Act are not triggered. Consequently, Lamar's arguments that the proposed change to a digital billboard is a "conversion, alteration or renovation [that] was expressly contemplated by the terms of the act" and that there was no change in use of the property but, rather, there was a "change in structure or change in operation" are unavailing.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
RICHARD H. DINKINS, JUDGE